# CHARLESTON.

CROSTON *v.* MALE, *et al.*

Submitted June 16, 1904. Decided November 15, 1904.

1. PARTITION SUIT—*Decree.*
   But for the statute authorizing it, a sale of real estate could not be decreed in a suit for partition thereof. (p. 210).

2. FREEHOLD—*Court of Equity.*
   This statute is an innovation upon fundamental principles of the common law and of American jurisprudence, and can-

not become a license to the courts to take from the citizen, for light or trivial causes, his freehold on payment of compensation, though full and adequate. (p. 210).

:3.   PARTITION SUIT—*Property—Sale.*
  Before decreeing a sale in such case, without the consent of the parties interested, the court must ascertain two things; first, that partition cannot be conveniently made, and, second, that the interests of the parties will be promoted by a sale of the property. (p. 210).

.4.   PARTITION SUIT—*Dower.*
  Inconvenience of partition as one of the circumstances authorizing such sale, does not contemplate physical impossibility of division, but the requirement is not satisfied by anything short of a real and substantial obstacle of some kind to division in kind, such as would make it injurious to the owners. Meagerness of area in some or all of the shares, due to the necessity of dividing a small tract of land among a number of people and the existence of dower and curtesy estates in the land, do not *per se* make partition inconvenient within the meaning of the statute. (p. 211).

:5.   PARTITION SUIT—*Compulsory Sale.*
  To warrant compulsory sale in such case, it must appear that the interests of all the owners will be promoted by it. (p. 213).

‹6.   HEIRS AT LAW—*Sale of Estate.*
  Whether the aggregate value of the several parcels into which the whole premises must be divided will, when distributed among, and held in severalty by, the different parties, be materially less than the value of the same property if owned by one person, is a fair test by which to determine whether the interests of the parties will be promoted by a sale. (p. 213).

‘7.   HEIRS AT LAW—*Guardian—Infant Heirs.*
  When a sub-division of one parcenary share is to be made among infants, their shares may be laid off together at the election of their guardians, or, for want of such election, by direction of the court in the enforcement of equity and justice in the partition, and, without such election or direction, the commissioners appointed to make partition may so lay them off; and, if such shares are subject to a dower interest, it may be made contiguous to such shares, when the part assigned for dower is not divided subject thereto. (p. 212).

:8.   HEIRS AT LAW—*Life Estate.*
  When an entire share goes to heirs, subject to an estate by

the curtesy, it cannot be compulsorily partitioned until after the expiration of the life estate.   (p. 215).

9.   ESTATE—*Decree of Sale—Commissioners.*
      Commissioners ought not to be appointed, and no sale ought to be decreed, without a prior or contemporaneous adjudication as to the interests of the parties, fixing the shares or other interests to which they are entitled, and it is reversible error to decree a sale without such adjudication, if there is any uncertainty as to the interests of the parties.   (p. 214).

10.   BILL OF PARTITION—*Decree.*
      Upon a bill, alleging facts sufficient to show a right to have partition, and praying general relief, the court may decree a division in kind, although there is no specific prayer for it in the bill.   (p. 214).

Appeal from Circuit Court, Taylor County.

Bill by Martha J. Croston against Ruth Male and others. Decree for plaintiff, and defendants appeal.

*Reversed.*

WARREN B. KITTLE, for appellants.

IRA E. ROBINSON, for appellee.

POFFENBARGER, PRESIDENT:

This case presents the question, whether it was error for the court, upon the facts shown by the pleadings and the report of commissioners, appointed to make partition of certain lands, to decree a sale thereof instead of a division in kind, the plaintiff having favored such sale, while with a single exception, the adult defendants having only life estates, opposed it.   One-third of the land, about two hundred and forty acres in all, belonged to one set of infants, subject to the dower of their mother, another third to another set of infants, subject to an estate therein by the curtesy belonging to their father, while the residue belonged to the plaintiff, and the whole estate was subject to dower of the widow of the decedent.

Hiram Male, being the owner of said two hundred and forty-one acres of land, unincumbered by any indebtedness, and also of considerable personal property, all in Taylor county, died, leaving surviving him his widow, Ruth Male, a son, Boyer Male, a daughter, Amanda Minor, the wife of Charles Minor, and another daughter, Martha J. Croston, the wife of Charles Cros-

ton. Subsequently, Boyer Male died, leaving his children Rosa Bell, Eugenus, Hiram and Benjamin, and his wife, Berthena Male, surviving him. Amanda Minor also died, leaving her husband, and her children, Aldine, Sarah and Ruth surviving her. Martha J. Croston instituted this suit for partition of the land. The bill alleges that there are three tracts, one of seventy-seven acres, another of fifty-eight and one half acres and a third of one hundred and six and one eighth acres. These lands are all contiguous, but form an irregular body, the average length of which is more than three times the average breadth, with a narrow place near the center. The bill does not pray a division in kind, but alleges that the land cannot be so divided conveniently, and that the interests of those entitled will be promoted by a sale of the same, and a sale thereof is accordingly asked for, and there is also a prayer for general relief.

An answer for the infant defendants by guardian *ad litem* was filed in the usual form. Berthena Male answered the bill, denying that the land was not susceptible of partition without injury, alleging that it could be conveniently divided, denying that the interests of the parties would be promoted by a sale thereof, and praying a division in kind. Charles Minor filed an answer of the same kind. Thereupon the court appointed commissioners to go upon the land and make partition thereof, if it could be conveniently divided and "assign to each heir of their descendants *per stirpes* an equal one-third interest in said estate, quantity and quality considered, and return a plat and report of their proceedings," and, if they should find it inconvenient to make partition, report that fact to the court. Their report recommended a sale and set forth certain facts in support of the recommendation. They considered the land as lying in two tracts, one of one hundred and thirty-five and one-half acres and the other of one hundred and six and one-eighth acres. Of the former, they said about thirty acres was rough, situated on the bank of a river, almost destitute of good timber and comparatively worthless for farming or grazing purposes; and that the residue was ordinary land worth about twenty dollars per acre, with ordinary frame buildings and other outbuildings on it, had but little good timber on it, the timber having been culled by former owners, and had grown up in

briars, broomsage and other filth; that there was scarcely any fencing on it, and that the standing timber was inaccessible to most of the farm. Concerning the other tract, they said it was situated about two miles from the village of Webster and about the same distance from the Valley River and a railroad, that it was the home farm, and better land than the other tract and in better repair, having a good frame dwelling and outbuildings, that it had no timber except a small tract on the northeast corner, that the fencing was out of repair and the land grown up in briars and filth, and that it was werth about twenty-five dollars an acre as a whole. They further said there was a tract of bottom land in it containing about nine acres of much greater value than the hill land, and that the two tracts lie on opposite sides of a high river hill, adjoining each other near the top of the hill. Considering these facts and the interests of all the parties, the dower of the widow, the infant children, their number, the dower of the widowed daughter and curtesy of the son-in-law, the lack of uniformity of value by reason of locality and improvements, the commis-- sioners thought the lands were not susceptible of partition in kind. They had therefore assigned to the widow, Ruth Male;. dower in the land, twenty-five acres in the one hundred and six acre tract, including the mansion house, and twenty-nine· acres and three roods in the other tract, and recommended a sale of the lands subject to the dower thus assigned. To this· report, the defendants, Charles Minor and Berthena Male ex-- cepted. Ruth Male, the widow, to whom dower had been as-- signed, filed an answer waiving her right to dower in the land,. and agreeing to take a gross sum in lieu thereof, and thereupon the court overruled the exceptions and decreed a sale of the· land, reciting among other things that it was "impossible to· assign dower to the said Berthena Male in the one-half interest of said real estate." How she happened to be entitled to dower in such portion does not appear.

The general rule, governing the determination of the ques- tion whether a sale of land shall be made upon a bill for parti- tion is stated in *Roberts* v. *Coleman,* 37 W. Va. 143, as follows: "Joint owners of land are entitled to have partition in kind, each to have his share allotted to him in severalty, unless such right be waived. A sale can not be decreed in a partition suit

unless it appears, by report of commissioner or otherwise by the record, that partition can not be conveniently made, and also that the interests of those interested in the land or its proceeds will be promoted by a sale." In any case, such sale may be made if the parties are all adults and consent thereto. But the court has no right to decree a sale without their consent, unless it finds, first, that partition in kind cannot be conveniently made, and, second, that the interests of the parties owning the land will be promoted by a sale. These two requisites are conditions imposed by the statute, which alone confers upon a court of equity the power to make a sale at all. They are important and indispensable conditions. The statute is an innovation upon the common law, taking away from the owner the right to keep his freehold, and converting his home into money. That must not be done except in cases of imperious necessity. It is a legislative alteration of a canon of the law which forms part of the sub-structure of our jurisprudence. Forcible conversion of property into money is avoided wherever possible. To prevent this, the possessory writs, such as detinue and replevin, etc., for recovery of the property itself, instead of turning the injured owner away to sue for its value as damages are given, and where the property is of such nature, that the remedies of the law courts are inadequate to its recovery, equity supplies the defect by the use of its more diverse and flexible processes. Therefore, it would be at variance with fundamental and basic principles to say the legislature intended to authorize a sale instead of a division for any light or trivial cause. So sacred is the right of property that, to take it from one man and give it to another for private use, is beyond the power of the state itself, even upon payment of full compensation. The *jus publicum* alone authorizes the conversion of the citizen's property into money without his consent.

An adjudication by the trial court, that the conditions are such as to call for a sale on a bill for partition, is entitled to great weight and will not be overthrown by the appellate court, unless it can clearly see that the trial court has erred in its conclusion, for it is presumed, in the absence of anything to the contrary, that a solemn recital in a decree of a court of record and of general jurisdiction has not been entered without mature consideration and upon sufficient evidence. But if it

appears that by reason of inadvertence or failure, for the time being, owing to haste in disposing of a large docket, to appreciate the spirit, purpose and controlling influence of these limitations upon the power of sale, land has been decreed to be sold without sufficient cause, it is the duty of the appellate court to reverse the decree. *Roberts* v. *Coleman,* cited; *Clason* v. *Clason,* 6 Paige (N. Y.) 541.

What are the rules and principles which ought to govern the court in determining whether division in kind is inconvenient, and whether the interests of the owners will be promoted by a sale? Chancellor Walworth, in *Clason* v. *Clason,* cited, has given this question fuller discussion than is usual in the opinions of the courts. He says: "The question is not as supposed by the master, whether it would be for the benefit of the infants to have their shares of the estate converted into money instead of remaining in land producing a less income. For if it is for their interest to sell their shares for the purpose of a better investment, it may be done afterwards under the general law relative to the sale of infants' estates; and when they will not run the risk of having their interest in a large property sacrificed for want of funds to compete with their adult tenant in common at the sale. The true question to be decided by the master, under the statute, is whether the whole property, taken together, will be greatly injured or diminished in value if separated into three parts, in the hands of three different persons, according to their several rights or interests in the whole; in other words, whether the aggregate value of the several parts when held by different individuals in severalty would be materially less than the whole value of the property if owned by one person. In this case, if the value of the land in different parts of the tract is nearly the same, the complainant would have a farm of about two hundred and fifty acres for his share and worth $50,000.00, and each of the infant defendants would have a little more than sixty acres and worth about one-fourth of that sum. And if some portions of the land are much more valuable than others, a greater quantity of that which is least valuable might be set off for the shares of the defendants, so as to increase the size of their farms. But if a sale is to take place under a decree in partition, as the guardian *ad litem* has no funds to enable him to bid upon

the property for the infants, this property which is stated by
the master to be worth $75,000.00 may be sacrificed for half
that amount, unless the decree should contain special directions
to the master not to sell it below a certain specified amount."

It will be observed that, in coming to a conclusion, he con-
sidered the quantity of land, the number of shares into which
it was to be divided, the status of the parties with reference to
disability and ability to protect their interests at the sale, the
extent of their respective interests in the land, and the relative
value of the land when divided and the sum which might be
realized by a sale of it undivided. Looking at the situation of
the land and the owners in this case, it is to be noticed that the
quantity is about two hundred and forty acres. One-third of
this the widow is entitled to hold as her dower, leaving one
hundred and sixty acres to the immediate possession of which
the heirs are entitled. Of this residue, the plaintiff is entitled
to one-third, unless since the commencement of the suit, some
changes have been affected by purchase or otherwise. This
would give her immediately more than fifty acres, assuming
that the land is of equal value. In another one-third of it,
over fifty acres, Charles Minor has a life estate and his chil-
dren the remainder in fee. These children are dependent upon
him for their support, and fifty acres of land affording him a
home for himself and them may be much more valuable to
them than its proceeds in money. The other third belongs
to the children of the deceased son, Boyer Male, subject to the
dower therein of their mother, their natural guardian. There
is no reason why the shares of these children may not be laid
off together. The statute provides that two or more parties
may have their shares laid off together when partition can be
conveniently made in that way. Code, ch. 79, § 2. The
court has in its keeping the protection of infant parties and
the power of electing for them and should exercise it, if it be
apparent that their interests require it. Upon partition, this
one-third can be thrown together, giving the widow her dower,
as one tract or parcel adjacent to the parts, to the possession
of which her children are entitled, and thus a home for the
mother and children may be provided. Nothing in this record
indicates that the money which may be realized from a sale of
their interests will be more to their advantage than a home so

provided. On the contrary, she, on behalf of herself and children, protests against the sale as does Charles Minor on behalf of himself and his children. Formerly the method of partition seems to have been to divide the land into equal parts, when the shares were equal, and then determine by lot the distribution of them. But now they may be assigned by the commissioners, to avoid the risk of an unfortunate allotment. They may distribute them upon principles of equity and justice, and, of course, in this, their action is under the control of the court. *Cox* v. *McMullin,* 14 Grat. 82.

Nobody insists upon a sale except the plaintiff who is an adult, having a living husband and better able to take care of herself than any of the other parties so far as can be ascertained from this record. If, as indicated by the last decree, Berthena Male has, in some way, acquired the title of one-half of the land, since the commencement of the suit, this circumstance only strengthens her opposition to the sale. What peculiar circumstance makes it to the interest of the plaintiff to have a sale rather than a division in kind, the court cannot know. She may have a good home elsewhere. If so, she can live upon it, and take her interest in these lands, and then convert them into money at private sale. But a sale cannot be made merely to advance her interests. Before selling, the court must ascertain that the interests of all will be promoted. One test by which this is determined is declared to be "whether the aggregate value of the several parcels into which the whole premises must be divided will, when distributed among the different parties and held in severalty, be materially less than the value of the same property if it be owned by one person." *Clason* v. *Clason,* cited. The commissioners do not report that a division in kind will make the aggregate value of the several parcels less than the value of the property as a whole. The court must have inferred it from the facts reported. The report shows that this land is not located in the wilds of the mountain regions, far from human habitation, but, on the contrary, that it is about two miles from the railroad and about the same distance from a village, and is improved agricultural land. It is perfectly apparent that small parcels of land, thus situated, bring better prices per acre at judicial sales than large ones. There are more people able to buy small tracts than

large ones. A small tract near a railroad and village better
answers the purposes of a home and affords greater aid in sup-
plying the wants of a family than one situated far from mar-
kets, or not within easy access of them. In view of these cir-
cumstances, it seems clear that the court has erred in its con-
clusion with reference to the inconvenience of making parti-
tion and promotion of the interests of the parties. Though
the bill does not specifically pray for it, partition may be had
upon it as the allegations are sufficient and there is a prayer
for general relief. *Furbee* v. *Furbee,* 49 W. Va. 191.

The interlocutory decree, appointing commissioners, makes
no reference to the dower interest of the widow of the deced-
ent, to the estate by the curtesy of the husband of the deceased
daughter, nor to the dower interest of the widow of the de-
ceased son; nor does it ascertain and fix the interests of the
other parties. Under some circumstances, the failure to do
these things, is error when carried into the final decree, pre-
judicing the rights of the parties and works a reversal of it.
*Stephens* v. *McCormick,* 19 S. E. 743; *Childer* v. *Loudin,* 51
W. Va. 559. In the latter case this Court said: "It is the duty
of the court, before decreeing a sale in a partition suit, to ju-
dicially determine the rights and interests of the co-tenants
in the land, and failure to do so is ordinarily reversible error."
Manifestly, it is more important in the case of a sale than in
that of a division in kind, for the parties interested ought to
know their rights so as to be able to protect them at the sale,
as in the case of creditors interested in property about to be
sold. But even where partition is to be made, it ought to be
done. Freem. on Cot. & Par. § 518, says the interlocutory
decree, determining the interests of the parties, furnishes the
basis upon which the commissioners are to proceed. Mani-
festly, much inconvenience and useless cost might result from
proceeding without having made an adjudication as to the in-
terests of the parties. Suppose a partition to be made upon a
wrong basis, in consequence of which the commissioners would
have to go back and make a new division of the land. Dower
and curtesy must be set apart and it is for the court, not the
commissioners, to determine who is entitled to these estates, and
in what lands and to what extent. Good practice at least re-
quires a settlement of all these questions in advance of the ap-
pointment of commissioners.

It is clear that the children of Charles Minor are not entitled to *immediate possession* of any part of the lands. Under the principles laid down in *Merritt* v. *Hughes,* 36 W. Va. 356, there can be no subdivision of this one-third among them until the expiration of their father's life estate, without his consent. It belongs to them subject to his life estate, however.

For the errors aforesaid in directing the sale, the decree complained of will be reversed and the cause remanded for further proceedings according to the principles herein announced, and, further, according to the rules and principles governing courts of equity.

*Reversed.*