## Staunton.

## ROBERTS V. HAGAN.

### September 20, 1917.

1.  VENDOR AND PURCHASER—*Relief in Equity Against Collection of Purchase Money.*—In Virginia, the rule is that to entitle a purchaser of real estate to relief in equity against the collection of the purchase money on the ground of a defective title where the sale has been consummated by the execution and acceptance of a general waranty deed (without other covenants), the title must be questioned by a suit either prosecuted or threatened, or it must be clearly shown that the title is defective. Uncertainty about the existence of a will of a prior owner of the land through whom the vendor claims, and about its provisions if it does exist, does not constitute such clear defect in the title as to afford the vendee any ground for relief against the payment of the purchase money.

2.  INSANITY—*Sale of Land—Collateral Attack.*—The interest of one of the heirs of a decedent was sold pursuant to the prayer of a petition filed in a partition suit by her brother, who claimed to be her committee. The evidence of his appointment as such was unsatisfactory and the evidence of her insanity wholly insufficient. This latter fact, in itself, constituted a fatal defect in the proceedings by the alleged committee; and, moreover, those proceedings were wholly wanting in some of the jurisdictional requirements of the statute (Code, chapter 117) relating to the sale of lands of persons under disability. The sale, therefore, was void and subject to collateral attack.

3.  PARTITION—*Section 2564 of the Code of 1904—Equity.*—By a proper method, under section 2564, Code of 1904, it would have been entirely within the power of the court in a suit for the partition of a decedent's estate by the purchaser of the interests of some of the heirs, to have assigned to the purchaser the entire estate to be partitioned, upon his payment to the other heirs of the amounts to which they would be entitled for their interests. But as section 2564 created and conferred a special statutory jurisdiction upon the court, a failure to comply

with its provisions was fatal to the proceeding. Equity has no inherent jurisdiction to order a sale of land for the purpose of partition.

4. PARTITION—*Section 2564 of the Code of 1904—Sale of Undivided Interest.*—Code of 1904, section 2564, provides that when partition cannot be conveniently made, the entire subject may be allotted to any party who will accept it and pay for the other interests. Or if the interests of those who are entitled to the subject will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, the court may order such sale and allotment. There is no warrant in this section for selling by a public and enforced sale an undivided interest in the estate. The sale must be made in the execution of a general partition scheme, in which all the parties are given equal consideration.

5. PARTITION—*Section 2564 of the Code of 1904.*—Wherever, under section 2564 of the Code of 1904, there is a sale of a part and an allotment of the residue, the part allotted must be divided in kind, and the residue must be sold and the proceeds divided, the division in each case being made among all the parties in interest.

6. VENDOR AND PURCHASER—*Vendor's Lien—Priority.*—No lien or encumbrance created or suffered by the vendee can prejudice a prior lien for the purchase money.

Appeal from a decree of the Circuit Court of Wise county. Decree for complainant. Defendant appeals.

*Reversed.*

The opinion states the case.

*E. M. Fulton,* for the appellant.

*Bond & Bruce* and *Robert L. Pennington,* for the appellee.

KELLY, J., delivered the opinion of the court.

On September 18, 1909, Patrick Hagan conveyed to T. G. Wells a tract of land and retained a vendor's lien thereon

to secure $1,500 of the purchase money. The conveyance was made "with covenants of general warranty."

On March 15, 1911, T. G. Wells conveyed the same land to W. H. Roberts, who, as a part of the consideration therefor, assumed the payment of the money secured by the vendor's lien retained in the former deed.

Subsequently, Patrick Hagan executed a general deed of trust to C. F. Hagan conveying to him what appears from the deed to have been a very large and valuable real and personal estate, with specific directions as to its management and distribution. Under the terms of this deed of trust, C. F. Hagan, as trustee, became the owner of the debt and lien above mentioned, with the right to enforce the same, and this suit was brought by him for that purpose. Wells did not appear. Roberts answered, alleging the insolvency of Wells, and defended upon the ground of alleged defects in the title to the land. The circuit court decreed a sale to enforce the lien, and Roberts appeals.

In Virginia, the rule is that to entitle a purchaser of real estate to relief in equity against the collection of the purchase money on the ground of a defective title, where, as here, the sale has been consummated by the execution and acceptance of a general warranty deed (without other covenants), the title must be questioned by a suit either prosecuted or threatened, or it must be clearly shown that the title is defective. *Ralston* v. *Miller*, 3 Rand. (24 Va.) 44, 48, 15 Am. Dec. 704; *Koger* v. *Kane*, 5 Leigh (32 Va.) 607, 609; *Morgan* v. *Glendy*, 92 Va. 86, 89, 22 S. E. 854; *Pack* v. *Whitaker*, 110 Va. 122, 125, 65 S. E. 496.

Patrick Hagan's claim to the land was derived from the heirs of Martha Holdway. It is conceded that she had a good title thereto, but the appellant contends that her interest therein does not satisfactorily appear to have ever been fully acquired by Hagan.

The first objection urged against the Hagan title is that Mrs. Holdway appears to have made a will of which neither the original nor any copy has been produced, and that for all appellant knows she may have devised the land to persons other than her heirs at law under whom Hagan claims. The only facts appearing in the record regarding this alleged will are as follows: After Mrs. Holdway's death, Patrick Hagan brought a suit in equity (known in the record and hereinafter referred to as the partition suit) against certain of her heirs, alleging that he had acquired the interests of the other heirs to the land, and praying for a partition or sale, in accordance with what the court might deem "best for all parties concerned." The bill in that suit stated, among other things, that Mrs. Holdway had devised the land to her husband for life, and that at his death "the same descended to the heirs at law of said Martha E. Holdway, who were her six brothers and sisters." The answer and cross-bill in the present suit filed by the defendant, Roberts (appellant here), sets out this partition suit at length, and, with special reference to the point now under consideration, avers that "no will of Martha E. Holdway has ever been admitted to probate, and that she has not been dead seven years, and for aught respondent knows the disposition of said land by her in said will may have been entirely different from that stated in the bill." The complainant (appellee here) answers the cross-bill upon this point as follows: "The will of Martha Holdway does not vest title to or any interest in the said land in any other person than the aforesaid heirs. A copy of the will is filed herewith marked 'Exhibit E,' and it is prayed to be read as a part hereof." The exhibit was not filed and no further light is thrown upon the subject of this will, except that there appears in the record, without objection, a certificate of the clerk of the Circuit Court of

Wise county, made in October, 1916, over three years after the present suit was brought, to the effect "that there is not any will of Martha Holdway of record" in his office.

The uncertainty about the existence of the will, and about its provisions if it does exist, does not constitute such clear defect in the title as to afford the appellant any ground for relief against the payment of the purchase money. From all the indications to be derived from the references to the will in the record, and from the history of the title since the death of Mrs. Holdway, it would seem safe to assume that the provisions of her will, if she made one, were as alleged in the partition suit. Mrs. Holdway had been dead for more than ten years when this suit was brought—more than fourteen years when the decree complained of was rendered. This appears from the fact that some of her heirs conveyed to Hagan in 1902, which of course was after her death. During all the intervening period there has been no suggestion of any claim under a will adverse to those from whom Hagan claims title. The appellant, in his answer, states with emphasis that he did not know of any of the alleged defects in the title until July, 1912. This was more than a year after the date of his deed, and more than a year after the purchase money he had assumed to pay was due. If he had paid this money at maturity, he would have been, as an innocent purchaser, fully protected by section 2547-a of the Code, requiring that wills of real estate, as against such purchasers, must be recorded within seven years after the testator's death. Whether or not he would be so protected now, after having notice of the possibility of such a will, before paying the money, we need not stop to inquire, because under all the circumstances we do not think he has shown that the facts with regard to this alleged will constitute a clear defect in the title.

We pass now to the most serious ground upon which the title is questioned.

73

Among the heirs of Mrs. Holdway were, Una Culbertson, a sister, entitled to an undivided sixth interest in the land, and the infant children of Martha Morefield, a deceased niece, entitled to an undivided fifty-fourth interest therein. Both of these interests were sold in the partition suit above mentioned, and were bought in by Patrick Hagan. The appellant contends that both sales were void, and we think this contention is correct. It is not necessary to go at any length into the proceedings under which the sales were made. They were ordered by separate decrees, but were carried into effect by the same deed from Bond, commissioner, to Hagan. At the time of the purchase by Hagan of the interests of Una Culbertson and the Morefield heirs, he had acquired the interests of all the remaining heirs of Martha Holdway, and as a matter of fact no partition was ever actually made in the partition suit. The interest of Una Culbertson was sold pursuant to the prayer of a petition filed in the partition suit by her brother, J. K. Culbertson, who claimed to be her committee. The evidence of his appointment as such was unsatisfactory and the evidence of her insanity wholly insufficient. This latter fact, in itself, constituted a fatal defect in the proceedings by the alleged committee; and, moreover, those proceedings were wholly wanting in some of the jurisdictional requirements of the statute (Code, ch. 117) relating to the sale of lands of persons under disability. The sale, therefore, was void and subject to collateral attack. *Brenham . v. Smith,* 120 Va. 30, 90 S. E. 657. By a proper method it would have been entirely within the power of the court in the partition suit to have assigned to Patrick Hagan the entire estate to be partitioned, upon his payment to Una Culbertson of the amount to which she would be entitled for her interest. Code, section 2564. But there was no pretense of compliance with the terms and provisions of the section of the Code just cited (more fully discussed be-

low), and as that section created and conferred a special statutory jurisdiction upon the court, a failure to comply therewith was fatal to the proceeding. Equity has no inherent jurisdiction to order a sale of land for the purpose of partition. 2 Min. Inst. (4th ed.) 489; *Croston* v. *Male,* 56 W. Va. 205, 49 S. E. 136, 107 Am. St. Rep. 918; 30 Cyc. 267.

It is equally apparent that the sale of the Morefield interest was void. The commissioners appointed in the partition suit to make partition of the land, reported to the court that it would be impossible to lay off the small interest belonging to the Morefield children in such manner as to make it worth as much per acre as the land ought to sell for, and recommended to the court "that the interests of the said infants be sold before any further attempt to partition said land is made." Thereupon the court appointed a commissioner to make sale of this undivided interest, which he did, and Hagan became the purchaser. This sale did not purport to be made in compliance with chapter 117 of the Code; and it was wholly lacking in the essential requisites of a valid sale under the partition statute, section 2564. The latter section provides that "when partition cannot be conveniently made, the entire subject may be allotted to any party who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to; or in any case now pending or hereafter brought, in which partition cannot be conveniently made, if the interests of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, the court, notwithstanding any of those entitled may be an infant or insane person, may order such sale, or such sale and allotment," etc. In this instance, the court might, under proper proof and proceedings, have allotted the whole of the land to Hagan, requiring him to

pay to the infants such sums as their interests entitled them to receive, but this could only have been done in a general partition scheme, and the record in the partition suit affirmatively shows that there was to be "no further attempt to partition" until after this isolated sale was made. There is no warrant in the statute for thus selling by a public and enforced sale an undivided interest in the estate. It so happened that Hagan became the purchaser and that he finally acquired all the interests in the land, but the statute does not permit one of the parties to acquire the interests of the others in this manner. It is easily apparent that this is not the proper way by which to allot the entire subject "to any party who will accept it and pay therefor to the other parties such sums of money as their interests therein may entitle them to."

Nor was there any authority to make this sale under that branch of the statute which provides for "an allotment of part and a sale of the residue." Here, too, the sale must be made in the execution of a general partition scheme, in which all the parties are given equal consideration. Wherever there is a sale of a part and an allotment of the residue, the part allotted must be divided in kind, and the residue must be sold and the proceeds divided, the division in each case being made among all the parties in interest. *Jackson* v. *Jackson,* 110 Va. 393, 66 S. E. 721.

Inasmuch, therefore, as the sales of these two interests to Patrick Hagan were, in so far as the record before us discloses, null and void, the defense offered to the instant suit by Roberts was good to that extent, and should have been sustained.

The next question raised by the appellant in regard to the Hagan title rests upon the contention that two certain deeds, dated respectively December 2, 1902, and December 13, 1902, from sundry heirs of Mrs. Holdway to Patrick Hagan, are not in fact absolute conveyances, but are merely

executory in their nature, and, moreover, if they are ab-
solute conveyances they do not convey a fee simple title
to the land. This objection, certainly as to the deed of
December 2, 1902, is good, but it is fully met by a later
deed, dated June 22, 1906. This latter deed, however, was
not recorded until nearly a year after this suit was brought,
and makes its first appearance in the record by a guarded
stipulation of counsel, made after the case reached this
court, which simply files the curative deed in question and
shows that it was recorded on July 14, 1914, and that this
suit was brought in September of the preceding year. The
clear inference from the commissioner's report on the title
is that he had not seen or heard of it, for he undertakes to
specify the deeds by which Hagan acquired the title, and
makes no reference to this one. Whether it was ever
brought to the attention of the circuit court the record
does not disclose. This deed of June 22, 1906, however,
removes what otherwise appeared to be a palpable defect
in the title; and as the decree must be reversed on other
grounds, the question discussed by counsel as to the effect
of this tardy production of the deed on the costs of the
suit becomes immaterial.

It was further contained in appellant's cross-bill, and in
his petition for appeal, that certain judgments against his
immediate grantor, T. G. Wells, constituted liens upon the
land, entitling him to relief. The answer to this claim is
twofold—first, that no lien or incumbrance created or suf-
fered by Wells could prejudice Hagan's prior lien for the
purchase money, and, second, that the record satisfactorily
discloses that the judgments in question had been satis-
fied before this suit was instituted.

The decree must be reversed, and the cause remanded,
with directions to the circuit court to allow the appellee
a reasonable time, to be prescribed by the court, to perfect
the title as to the interests of Una Culbertson and the

Morefield heirs, and, in the event that this cannot be done in whole or in part, to refer the cause to a commissioner to ascertain what sum would be reasonable and just as a credit to the appellant for the interests as to which the appellee is unable to make good title. *Clarke* v. *Hardgrove,* 7 Gratt. (48 Va.) 399, 407.

*Reversed.*