# Richmond

LAURA A. CAUTHORN AND PAUL M. CAUTHORN, INDIVIDUALLY
AND AS GUARDIAN AND ADMINISTRATOR, ETC. v.
LILLIAN B. CAUTHORN, ETC., ET AL.

January 17, 1955.

Record No. 4307.

Present, Hudgins, C.J., and Eggleston, Spratley, Buchanan, Miller
and Smith, JJ.

The opinion states the case.

*Satterfield & Anderson and Allen, Allen, Allen & Allen,* for the appellants.

*John W. Fussell, Stuart L. Williams* and *E. W. Hening, Jr.,* for the appellees.

HUDGINS, C.J., delivered the opinion of the court.

This is an appeal from a decree sustaining a demurrer to appellants' bill, in which bill it is charged that a decree in a former suit for partition of land and all conveyances made subsequent thereto were null and void.

The facts alleged in the bill are substantially as follows: On November 26, 1949, Lillian B. Cauthorn, as owner of one-half undivided interest in 147 acres of land lying in Henrico County, instituted a partition suit against Richard G. Cauthorn, the owner of the other one-half undivided interest. On November 27, 1950, the cause was referred to Charles U. Williams, Jr., Commissioner in Chancery, to inquire and report among other things the following:

"4. Whether the real property is susceptible of partition in kind amongst the owners in any of the modes prescribed by law; and if not—

"5. Whether any one or more of the owners is willing to

take the whole property and pay to the others such sums of money as their interest may entitle them to; . . ."

Before the Commissioner had taken the accounts he reported to the court that Richard G. Cauthorn was *non compos mentis* and, hence, was unable to defend his rights. Thereupon, the court appointed Robert J. Smith, a practicing attorney, as the guardian *ad litem* for the insane defendant, who thereafter appeared in the suit as such guardian *ad litem.*

On October 26, 1951, the Commissioner filed his report in which he stated that: "While it is feasible that the property could be partitioned in kind amongst the owners, Lillian B. Cauthorn has offered to pay Richard G. Cauthorn one-half of the value of the property, to-wit, $4,750.00, together with one-half of the cost of this proceeding. This offer constitutes the plan now acceptable to the defendant, Richard G. Cauthorn, as represented by the statement of the Guardian ad litem set forth on page 9 of the record." This statement is set forth in the bill as follows: "Mrs. Lillian B. Cauthorn has testified that she would be willing to purchase the property involved in this suit and pay to the defendant the amount to which he would be entitled. This would be agreeable to the Guardian ad litem. I am satisfied that the defendant is not in a position to take the whole and pay to Mrs. Cauthorn her interest in the property."

The court approved this report of the Commissioner, ordered the $4,750.00 offered by Lillian B. Cauthorn to be accepted and paid to Paul M. Cauthorn, who had been appointed guardian of Richard G. Cauthorn, the incompetent. Special Commissioners were appointed to convey, and did execute a deed conveying, the one-half undivided interest of the incompetent defendant to Lillian B. Cauthorn. Within four months thereafter Lillian B. Cauthorn executed a deed purporting to convey the same property to Hurley S. Cauthorn, Jr. Hurley S. Cauthorn, Jr. and his wife executed a deed purporting to convey to the county of Henrico a strip of the land along the Pump road containing 1.62 acres for the purpose of widening this road.

Sometime after the decree of sale was entered and after the deeds mentioned above were executed and delivered, Richard G. Cauthorn died intestate leaving a widow, Laura A. Cauthorn, and Paul M. Cauthorn his only heir at law, both of whom instituted this suit.

The demurrer admits these allegations of fact to be true. The question thus presented is whether a court in a suit for partition has the authority on the consent of the guardian *ad litem* to order the sale of an incompetent defendant's one-half undivided interest in land to his co-tenant, where the record clearly discloses that land is divisible in kind between or among the joint owners.

Appellees do not contend "that a guardian ad litem has the power to consent to anything on behalf of his ward who is *non sui juris* beyond mere procedural matters." This statement in appellees' brief in effect admits that the court committed error in ordering the sale of the incompetent defendant's one-half undivided interest in the land. Their contention is that the decree ordering the sale was voidable, but not void, and since appellants did not file a bill of review or a petition for appeal within the time prescribed by law, the decree is final and not open to collateral attack. In support of this contention they rely upon the general rule that where a court has jurisdiction of the subject matter and the parties its decrees or orders cannot be collaterally assailed for error, if error they contain, and are, therefore, conclusively binding in their adjudications.

They further contend that since it appears from the allegations of the bill in this case that Richard G. Cauthorn, as a competent defendant, was served with process in the petition suit and that no guardian *ad litem* was appointed until after the decree of reference was entered, that he was properly before the court, and both he and his estate are bound by whatever decrees were subsequently entered in that suit. There is no allegation to the effect that Richard G. Cauthorn while competent answered the bill in the partition suit or did anything to affect adversely his interest.

Appellants do not contend that Richard G. Cauthorn was not properly before the court. Their contention is that Robert J. Smith, as the guardian *ad litem* of the incompetent defendant, had no authority or right to consent to the sale of the land to Lillian B. Cauthorn and, since it appeared on the face of the record that the land was divisible in kind, the court was without jurisdiction in a partition suit to order the sale, and that the decree of sale was null and void.

Whether the decree of sale under the circumstances is void or voidable depends upon the provisions of Code sections 8-690 and 8-692.

The former section (8-690) provides that certain named parties interested in land may compel a partition and that "any court having general equity jurisdiction of the county or corporation wherein the estate or any part thereof is shall have jurisdiction in cases of partition, and in exercise of such jurisdiction may take cognizance of all questions of law affecting the legal title that may arise . . .".

This section simply confers upon the courts of equity the same powers exercised by the common law courts in the partition of land and, in addition, authorizes courts of equity to settle all questions of law affecting legal title to the land involved. But this section does not authorize a court of equity to sell or allot any undivided interest in land. This power is conferred upon courts of equity by section 8-692, which is as follows:

"When partition cannot be conveniently made, the entire subject may be allotted to any one or more of the parties who will accept it, and pay therefor to the other parties such sums of money as their interest therein may entitle them to; or in any case in which partition cannot be conveniently made, if the interest of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, the court, notwithstanding any of those entitled may be an infant or insane person, may order such sale, or an allotment of a part thereof to any one or more of the parties who will

accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to, and a sale of the residue, . . .".

We have held in numerous cases that these statutes create and confer special statutory jurisdiction upon courts of equity for the partition and sale of land. Failure to substantially comply with the provisions of the statutes is fatal to the proceedings. Equity has no inherent jurisdiction to order a sale of land for the purpose of partition. *"Prima facie* each party is entitled to actual partition. . . .

"A sale cannot be decreed in a partition suit unless it appears by report of commissioner or otherwise by the record that partition cannot be conveniently made and also that the interest of those interested in the land or its proceeds will be promoted by sale." 14 Michie's Jurisprudence, Partition, section 26, p. 161, where numerous Virginia and West Virginia decisions are cited in the footnotes in support of the text.

In this case we are not dealing with a conflict in the evidence; on the contrary, the admitted fact is that the record of the former suit affirmatively shows that partition in kind "was feasible". On such a record the trial court had no authority in the partition suit to sell or allot the undivided interest of the incompetent defendant to his cotenant.

The authority of the court to allot or to sell land in a partition suit is predicated upon its being judicially determined from the record that "partition cannot be conveniently made". The existence of this fact must be determined by the court before ordering the sale or allotment. It was held in *Zirkle* v. *McCue, et al.,* 26 Gratt. (67 Va.) 517, under this statute, which was substantially the same then as now, that ". . . the case must be one in which partition cannot be conveniently made; and it must appear that the interest of the parties will be promoted by a sale of the property. These concurring circumstances are necessary to warrant a decree for such sale. . . ."

In *Croston* v. *Male, et al.*, 56 W. Va. 205, 49 S. E. 136, p. 137, the court quoted from *Roberts* v. *Coleman*, 37 W. Va. 143, 16 S. E. 482, the following: " '. . . But the court has no right to decree a sale . . . unless it finds, first, that partition in kind cannot be conveniently made; and, second, that the interest of the parties owning the land will be promoted by a sale. These two requisites are conditions imposed by the statute which alone confers upon a court of equity the power to make a sale at all. They are important and indispensable conditions. The statute is an innovation upon the common law, taking away from the owner the right to keep his freehold, and converting his home into money. That must not be done except in cases of imperious necessity. . . . Therefore it would be at variance with fundamental and basic principles to say the Legislature intended to authorize a sale, instead of a division, for any light or trivial cause. So sacred is the right of property, that to take it from one man and give it to another for private use is beyond the power of the state itself, even upon payment of full compensation. The *jus publicum* alone authorizes the conversion of the citizen's property into money without his consent.' "

This case on the bill and demurrer presents an unusual situation. The court in the partition suit, by approving and confirming the report of the Commissioner in Chancery, judicially determined that the land could be conveniently divided in kind and, notwithstanding that determination, it proceeded to sell the incompetent defendant's interest in the land. We said in *Farant Investment Corporation* v. *Francis*, 138 Va. 417, at p. 429, 122 S. E. 141: ". . . where it appears on the face of the proceedings that the court has jurisdiction to decide whether or not a condition of fact exists which is essential to its jurisdiction, and it decides that fact affirmatively, its decision cannot be assailed collaterally on the ground that it was erroneous; for in such case the error does not appear on the face of the proceedings; the record is presumed to speak the truth and

can be tried by inspection only; extrinsic evidence not being allowed to impeach the verity of the record." (Citing numerous authorities) . . .

"This is true, however, as appears from the authorities, only where there is nothing apparent on the face of the record which is sufficient to negative the existence of the facts adjudicated to exist. Accordingly, the same authority (23 Cyc. 1088) just quoted continues, as follows:

" 'Where the facts upon which the court assumes jurisdiction are recited in the record, and appear by it to have been such as would not in law confer jurisdiction, the judgment may be impeached collaterally; for in this case there can be no presumption, in aid of the judgment, that the recitals of the record are incomplete.' "

In *Coleman* v. *Virginia Stave Co..* 112 Va. 61, p. 75, 70 S. E. 545, Judge Buchanan, speaking for the court in a case involving a sale of infant's land, said: "It seems to be settled law, that where a new jurisdiction is created by statute and the mode of acquiring and exercising that jurisdiction by the court upon which it is conferred is prescribed by statute, a substantial compliance therewith, at least, is essential, otherwise the proceeding will be a nullity."

The facts in *Roberts* v. *Hagan*, 121 Va. 573, 93 S. E. 619, were that Patrick Hagan conveyed a tract of land to T. G. Wells and retained a vendor's lien thereon to secure $1,500.00 of the purchase money. Wells conveyed the same land to W. H. Roberts who assumed payment of the vendor's lien as a part of the purchase price. Later Patrick Hagan executed a deed conveying to C. F. Hagan as trustee, among other things, the above mentioned vendor's lien. C. F. Hagan as trustee instituted the suit to enforce the vendor's lien against T. G. Wells and W. H. Roberts. Wells was bankrupt and did not appear. Roberts defended the suit on the ground, among others, that Patrick Hagan's title to the land at the time he conveyed it to Wells was not good. This contention was in part based on the fact that Patrick Hagan, as the owner of the greater part of the

undivided interest in the land, had instituted a partition suit against Una Culbertson, the owner of an undivided one-sixth interest, and against the infant children of Martha Morefield, deceased, as the owners of an undivided fifty-fourth interest. The undivided interest of Una Culbertson and the undivided interest of the Morefield children, as such undivided interests, were ordered to be sold at public auction on different dates, at which sales Patrick Hagan became the purchaser.

It appeared from the record in the partition suit that Una Culbertson's undivided interest had been sold pursuant to the prayer of a petition filed in the partition suit by her alleged committee. The court held that the evidence tending to show that Una Culbertson was insane and that a committee had been appointed for her was wholly unsatisfactory and that the sale of her undivided interest could not be sustained as a proceeding under Chapter 117, Pollard's Code (1950 Code, Title 8, Chapter 30) (authorizing the sale of land of persons under disability). The court further held that the sale was invalid under the partition statute, Pollard's Code, section 2564 (1950 Code, section 8-692). Dealing with this statute the court said: " * * * But there was no pretense of compliance with the terms and provisions of the section of the Code just cited (more fully discussed below), and as that section created and conferred a special statutory jurisdiction upon the court, a failure to comply therewith was fatal to the proceeding. Equity has no inherent jurisdiction to order a sale of land for the purpose of partition. * * *

"It is equally apparent that the sale of the Morefield interest was void. The commissioners appointed in the partition suit to make partition of the land, reported to the court that it would be impossible to lay off the small interest belonging to the Morefield children in such manner as to make it worth as much per acre as the land ought to sell for, and recommended to the court 'that the interests of the said infants be sold before any further attempt to

partition said land is made.' Thereupon the court appointed a commissioner to make sale of this undivided interest, which he did, and Hagan became the purchaser. This sale did not purport to be made in compliance with chapter 117 (chapter authorizing the sale of persons under disability) of the Code; and it was wholly lacking in the essential requisites of a valid sale under the partition statute, section 2564.

" * * * (T)he record in the partition suit affirmatively shows that there was to be 'no further attempt to partition' until after this isolated sale was made. There is no warrant in the statute for thus selling by a public and enforced sale an undivided interest in the estate. * * * It is easily apparent that this is not the proper way by which to allot the entire subject 'to any party who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to.'

   *  *  *  *  *  *  *

"Inasmuch, therefore, as the sales of these two interests to Patrick Hagan were, in so far as the record before us discloses, null and void, the defense offered to the instant suit by Roberts was good to that extent, and should have been sustained."

We held in *Ferry Company* v. *Commonwealth*, 196 Va. 428, 83 S. E. (2d) 782, that a judgment of a court acting under limited power delegated by statute was void if such judgment was not embraced within the express terms of the statute nor included by necessary inference from the language used.

The record in that part of the partition suit set forth in appellants' bill in this case contains no general scheme of partition in which the owners of the undivided interests were given equal consideration. Indeed, the substance of the allegation is that Lillian B. Cauthorn offered to buy the incompetent's interest in the land, which the court accepted and appointed commissioners to convey his interest to her.

Before a court of equity is authorized to sell or allot an undivided interest in a partition suit, it must first determine

from a report of a commissioner in chancery or in some other way that partition in kind cannot be "conveniently" made in one of the modes prescribed by the statute. *Cunningham* v. *Johnson*, 116 Va. 610, 612, 82 S. E. 690. If the court determines from competent evidence in the record before it that the land is not susceptible of division in kind, the court is given broad powers to deal with the subject as the interest of the parties and the circumstances of the case may require. *Stamps* v. *Williamson*, 190 Va. 145, 56 S. E. (2d) 71. On the other hand, if it conclusively appears from the record in the partition suit that the land can be divided in kind and that, notwithstanding this fact, the court orders a sale without the consent of competent parties such decree ordering the sale is void and not merely voidable.

Appellees in their argument and brief contend that while appellants were not named parties to the partition suit they took an active part therein, participated in the negotiations and advised an acceptance of the purchase price offered by Lillian B. Cauthorn, which was later approved by the court. In other words, their contention is that appellants are estopped from making any attack upon the decree of the court directing the sale. The question of estoppel cannot be raised on the record now before this Court, as we must decide the case on the allegations of the bill admitted to be true by the demurrer.

This being true the only proper procedure for this Court is to reverse the decree of the trial court and remand the case for a trial on the merits.

It was stipulated at the bar of this Court and in the briefs that neither side desired to disturb the ownership of the 1.62 acres of land conveyed to the county of Henrico and that there was no necessity for the county to participate in this appeal. This agreement protects the rights of the county. Appellants in their brief ask the court to enter an order against "defendants Cauthorn" compelling them "to pay to complainants their share of the proceeds paid by defendant

county as consideration for said strip." Appellants overlooked the fact that this Court cannot on the record presented pass upon the merits of the case and determine the various rights of the parties. The only question this Court is deciding is that appellants by their allegations make out a *prima facie* case and that the trial court committed error in sustaining the demurrer.

Appellants further contend that the trial court erred in refusing to make all the original papers in the partition suit a part of the record in this suit for the purpose of appeal.

Appellants did not file the original or certified copies of the papers in the partition suit as exhibits with their bill. After Lillian B. Cauthorn and Hurley S. Cauthorn, Jr. had demurred to the bill the county of Henrico filed an answer calling for strict proof of the appellants' allegations. On June 12, 1953, appellants filed a paper entitled "Memorandum in Support of Bill of Complaint"[1], in which the trial court in effect was asked to consider the original papers in the partition suit and the deed books in the clerk's office, wherein the various deeds referred to are purported to be recorded, in passing upon the bill and the answer filed thereto by the county of Henrico. No proof was necessary so far as the demurrants were concerned, and the county is not appealing.

After the trial court had notified the attorneys for the respective parties that it had decided to sustain the demurrer

---

[1] "The facts upon which the complainants based their right to relief are set forth in paragraphs 1 through 8 of the bill of complaint, and are undisputed by the principal defendants, the CAUTHORNS. The defendant, COUNTY, in its answer to the bill, states that it is without sufficient information to admit or deny the said facts, and accordingly denies them and calls for strict proof thereof. Complainants submit that EXHIBITS 'A' AND 'B' with the bill are sufficient to prove facts alleged in Paragraph 1 of the bill. As to Paragraphs 2 through 8 of the bill, the complainants offer as evidence of proof thereof the record in the suit styled LILLIAN B. CAUTHORN v. RICHARD G. CAUTHORN, on file in the Clerk's Office of the above court, and indexed amongst the ended causes. The deed book references of the conveyances alleged in Paragraph 9 of the bill, and which are of record in the said Clerk's Office, offer undisputed evidence of the matters set forth in said Paragraph 9."

appellants moved the court to file the original papers and deeds in the partition suit with the papers in this cause. In this motion it is said: "Said proceedings and the decrees entered therein were, in fact, before the Circuit Court and were considered by it in sustaining the demurrer, either by actual examination or from the court's personal recollection." This Court is in no position to determine whether the trial court examined the papers in the partition suit or whether the judge of the court, who entered the decree in the partition suit, relied upon his memory as to the proceedings therein. In the absence of proof to the contrary, we assume that the trial court decided the case on the bill and demurrer.

Appellants did not comply with Sections 5:3(d), (e) or (f) of the Rules of Court in order to make the record in the partition suit a part of the record in this suit (nor was this necessary for the court to determine the sufficiency of the bill); hence, the trial court committed no error in its refusal to sustain appellants' motion.

For the reasons stated, the decree of the court sustaining the demurrer is reversed and the case remanded with directions to the trial court to give the appellees reasonable time to file answers to the bill and an opportunity to appear and be heard in defense of their respective claims.

*Reversed and remanded.*