## CIRCUIT COURT OF FREDERICK COUNTY

Virginia Lee Gooden

    v.

Robert L. Dick et al.

### November 22, 1982

### Case No. (Chancery) 6719

BY JUDGE ROBERT K. WOLTZ

The complainant is fee simple owner of a five-twelfths interest in a sixty-five to sixty-six acre tract of land. Her brother owns a three-twelfths interest, and his two daughters, both of whom were infants at institution of suit, each owns a two-twelfths interest. The prayer of the bill is for partition of the real estate, or if that be impractical, a judicial sale thereof and division of the proceeds.

The property lies in one of the quadrants created by an interchange between an interstate highway and a secondary highway. Its southern boundary consists of approximately 800 feet of accessible frontage on the secondary highway and less than 200 feet frontage without access on the interchange ramp. All other boundaries are straight lines excepting that portion of the western boundary in an arc along the interchange ramp. The property overall becomes wider as it extends northward from the frontage, and approximately the eastern two-fifths of the property extends northward more than 800 feet beyond the northern extremity of the western three-fifths of the property. Thus, the tract has some irregularity, including a considerable offset in its rear portion.

It is planted mostly to apple orchard with trees of varying age, but a portion approximately 800 feet by 800 feet lying in the southwestern corner of the tract and fronting on the secondary route is devoted to cultivation. The evidence does not show any particular variations in the topography of the tract.

An order of reference was directed to a commissioner in chancery to take evidence and make report, one of those references being "whether or not the real property is susceptible of partition in kind among the owners in any of the modes prescribed by law and, if not," *inter alia*, "whether the interest of those who are entitled to the real property or its proceeds will be promoted by sale of the entire real property and division of the proceeds." The commissioner's hearing was had after one of the infant defendants, both of whom had been represented by guardian *ad litem*, reached her majority. The commissioner found that the real property was not susceptible of partition in kind among the owners and that the interest of the owners would be promoted by a sale of the entire property and division of the proceeds among them.

The defendant Dick and his daughter newly come of age have filed exceptions to the Commissioner's Report with respect to his determinations that the property is not susceptible of partition in kind and that the interests of the parties will be served by sale of it and division of the proceeds. The guardian *ad litem* of the infant takes a position in support of these exceptions. The complainant contests the exceptions and seeks confirmation of the Commissioner's Report in all respects. The two adult defendants are willing to have their shares, being three-twelfths and two-twelfths respectively, and the two-twelfths of the infant, laid off together, as allowed by § 8.01–82, and the guardian *ad litem* recommends that the two-twelfths share of her infant be laid off with the shares of her father and sister.

The statutes or pertinent portions thereof determinative of this issue are as follows:

> Section 8.01–81. Tenants in common, joint tenants, and coparceners of real property . . . shall be compellable to make partition . . . .

> Section 8.01–82. Any two or more of the parties, if they so elect, may have their shares laid off together when partition can be conveniently made in that way.

> Section 8.01–83. *When partition cannot be conveniently made*, the entire subject may be allotted to any one or more of the parties who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to; or *in any case in which partition cannot be conveniently made, if the interest of those who are entitled*

*to the subject, or its proceeds, will be promoted by a sale* of the entire subject, or allotment of part and sale of the residue, the court, notwithstanding any of those entitled may be a person under a disability, may order such sale, or an allotment of a part thereof to any one or more of the parties who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to, and a sale of the residue, and make distribution of the proceeds of sale, according to the respective rights of those entitled . . . . (Emphasis added.)

"Partition is the division between two or more persons of lands which they jointly own as coparceners, joint tenants, or tenants in common." *Martin v. Martin*, 112 Va. 731, 734 (1911). Within this definition is imbedded the central feature of partition both at common law and under our partition statutes, viz., the division of the land itself among the co-owners. Under this concept, to speak of "partition in kind" is a redundancy; to speak of "partition by sale" is in strictest terms a faulty concept. In practice, such latter loose phraseology is common and convenient but may tend to erode the true and basic meaning of partition.

At common law, equity had jurisdiction to order partition, that is, division of the property among the co-owners in accordance with their interests, *Leonard v. Boswell*, 197 Va. 718 (1956), but exercise of this jurisdiction was discretionary, *Grove v. Grove*, 100 Va. 556 (1902). The common law rule further was that the shares of the co-owners had to be allotted in severalty, *Price v. Simpson*, 182 Va. 530 (1944), and equity had no jurisdiction to order sale of the land as a means of extracting and dividing among them the co-owners' interests therein. *Roberts v. Hagen*, 121 Va. 578 (1917).

To the extent it recognizes partition as an equitable jurisdiction, § 8.01–81 is declaratory of the common law, but otherwise, it is a departure from the common law by way of a considerable enlargement and extension of the jurisdiction.[1] All of §§ 8.01–82 and 8.01–

---

[1] In addition to making partition compellable, § 8.01–81 vests lien creditors with certain rights to compel partition and confers on equity courts jurisdiction to determine questions of law concerning legal title between the co-owners or between them and lien creditors. These new powers have been considered rad-

83 are additions to the original inherent common law equity jurisdiction over partition. Section 8.01–82 at one stroke both abrogates the imperative common law rule for allotment in severalty and confers additional authority on the court in that respect. For the purpose of severing the joint interests of co-owners in the land, § 8.01–83 is even more radical in effect as it provides means alternative to common law division in kind in severalty. Use of these alternatives, however, is severely restricted by the terms of the very statute establishing them.

Equity has no inherent jurisdiction to order sale of land and division of the proceeds as a substitute for partition. This jurisdiction is purely statutory by virtue of § 8.01–83. The statute sets aside the common law and gives the courts authority to "resort to the most advantageous devices which the nature of the case may admit." *Price v. Simpson, supra.* But where statutes create and confer on the courts a special statutory jurisdiction, in this instance, the methods of dividing undivided ownerships in land, failure to comply substantially with the statutory requirements is fatal to the proceeding. *Cauthorn v Cauthorn*, 196 Va. 614 (1955); *Roberts v. Hagen, supra.*

The statutes expanding the common law remedy of partition enable the courts to afford complete relief by granting jurisdiction to resolve all germane matters, legal as well as equitable. *Leonard v. Boswell, supra.* In doing so, § 8.01–83 authorizes sale of the entire res or allotment of part and sale of part, for equity had no inherent jurisdiction to do so. Notwithstanding the statute, every owner still has a right, *prima facie*, to actual, not substitute or constructive, partition. *Cauthorn, supra.*

The statutory limitations on this specially conferred jurisdiction to sell land as a means of constructive partition are two. Before a court is authorized to invoke this jurisdiction, it must first appear that "partition cannot be conveniently made." Second, it must appear that "the interest of those who are entitled to the subject, or its proceeds, will be promoted" thereby. *Custis v. Snead,* 53 Va. (12 Gratt.) 260 (1855). *Cauthorn, supra*, is also authority for the fact that before

---

ical enlargements of equity jurisdiction. Lile, Equity Pleading and Practice, 3d ed., § 361. The power to decide legal issues as to title was formerly accomplished by the chancery court referring the matter for decision to the proper law court which on the basis of comity undertook to determine the issue and certify its determination to the referring chancery court.

sale can be decreed it must appear factually that partition cannot be conveniently made, and if the record shows the land is partitionable (in the true sense of the word), then a decree for its sale without the consent of the parties is not merely voidable but void.

That case at page 620 sets forth the underlying reasons for the restrictions on sale. The statute takes away from the owner his former absolute right to keep his freehold in the land and provides for converting it into money, and that extreme remedy should not be worked against owners against their will except in case of "imperious necessity." The simple purpose of the restrictions are thus nothing more than a basic protection of private property rights. So "a court has no authority to decree a sale of land for partition unless and until it is made to appear, by an inquiry before a commissioner in chancery, or in some other way, that partition in kind cannot be made in one of the modes prescribed" by statute. *Cunningham v. Johnson*, 116 Va. 610, 612 (1914). As mentioned above *prima facie*, each person is entitled to partition. Consequently, "If the property is found to be divisible in kind, any co-owner has the right to insist that partition be so made, and therefore, the *primary question in every suit for partition* is whether a division in kind may be conveniently made." *Nickels v. Nickels*, 197 Va. 498 (1955) (emphasis added); Lile, Equity Pleading and Practice, 3d ed., §§ 371 and 372.

The limitation upon constructive partition through sale is not absolute. Theoretically, actual partition could always be had, but in many instances, the solution would be far worse in its application than the original problem. The law deals in practicalities and, while it regularly resorts to intellectual concepts and principles to resolve the myriad problems of society and its members, yet it looks for practical solution. So there is a restriction on the restriction against forced sale in lieu of partition, namely, when partition cannot be *conveniently* made, constructive partition by means of sale of the res may be demanded. It would be a poor thing if the law required an inconvenient partition to be made rather than permit any reasonable solution.

Thus, the next step is to examine the evidence, including the commissioner's report, to which exceptions have been filed. A commissioner's report is *prima facie* correct, but "when exceptions are filed to the report, it is the duty of the court to examine the evidence and review the conclusions of the commissioner and determine for itself

the correct decision to be made." *Raiford v. Raiford*, 193 Va. 221, 231 (1952); Lile, Equity Pleading and Practice, 3d ed., § 260.[2] This concept and the degree of weight to be given to a commissioner's report have been made statutory in § 8.01–610:

> The report of a commissioner in chancery shall not have the weight given to the verdict of a jury on conflicting evidence, but the court shall confirm or reject such report in whole or in part according to the view which it entertains of the law and the evidence.

While the report of a commissioner, especially where the evidence has been taken by him or in his presence, is entitled to no small measure of respect, in this case, the Court is of the opinion that the exceptions to the report should be sustained.[3]

The evidence before the commissioner in the Court's opinion does not overcome the *prima facie* entitlement to partition desired by the two adult defendants; that is, the evidence fails to establish that partition cannot be conveniently made. Reviewing the depositions taken before the commissioner and the plat of the property with evidence taken before the Court on the exceptions being heard, it does not appear that partition would be impracticable but that it can be practicably and conveniently made.

---

[2] The court in *Raiford* was dealing with the rule and practice of a court of general jurisdiction to refer divorce matters to commissioners in chancery, but its discussion is broader and it quotes somewhat extensively from *Shipman v. Fletcher*, 91 Va. 473 (1895), dealing generally with the need and concept and function of commissioners.

[3] Something was made by the complainant of the fact exceptions to the commissioner's report may not have been timely. The previous statutory provision in this regard, § 8–257, provided in part: "A cause may be heard upon a commissioner's report, after it shall have been returned ten days . . . ." From this some idea may have developed that exceptions to the report were necessary to be filed within that ten-day period. The present statutory provision, § 8.01–615, provides in pertinent part: "A cause may be heard by the court upon a commissioner's report. Subject to the Rules of Court regarding dispensing with notice of taking proofs and other proceedings, reasonable notice of such hearing shall be given to counsel of record and to parties not represented by counsel." This eliminated any requirement that the report lie for ten days and put the emphasis for hearing exceptions on giving notice. For further discussion, see Lile, Equity Pleading and Practice, 3d ed., § 258.

The complainant felt that, if partition were made, the tracts resulting would look very peculiar, but this is not to say that partition would be inconvenient. As the Court interprets the testimony of the complainant's expert, he in effect admitted that partition was a reasonable possibility, most especially if the land were divided into only two tracts, one of five-twelfths for the complainant and, as allowed by § 8.01–82, laying off together the shares totalling seven-twelfths of the other three co-owners.[4]

In simple terms, the problem in the case is one of money, and the prospect of much money may have served to divert the commissioner's attention from the basic law. Complainant's expert testified that the fair market value of the property was $97,500.00. He further testified that sale of it for $170,000.00, or approximately 70% more than its fair market value, the figure in a private contract of sale produced by the complainant and signed by her and the prospective buyer but not by any other co-owner, was without question in the best interest of the parties. Such a sale if effected would enrich each of the owners far beyond the expert's opinion of the land's actual value.

Perhaps the commissioner reached the conclusion that the property should be subject to constructive partition through sale because the interest of the owners would be promoted by a sale at a figure so far in excess of market value. The error of the report is essentially two-fold, both possibly tracing to the commissioner being led astray by the siren call of a very large prospective sale price. First, the report failed to find that partition could be conveniently made where the evidence supports such a finding. Second, the required statutory finding prerequisite to sale that the interest of the owners will be promoted thereby is a restriction on the authority to decree sale and a shield of protection against an owner losing his land, not a reason or

---

[4] As noted earlier, the father and the daughter recently arrived at majority with their shares laid off together and desire that the infant daughter's share be laid off with theirs. While agreeable to this, the infant is incompetent to make such decision; but her guardian *ad litem* strongly recommends this, and the Court seeing advantages in it by way of protecting the infant's right to preserve her interest in the land until she arrives at full age and can then decide whether to retain the undivided interest or sever it through proceedings for either actual or constructive partition feels it can approve laying off her share with that of her father and sister.

excuse to sell the land. Promotion of the interest of the owners is not to be taken out of the statutory context and converted from a protective shield into a weapon against an owner keeping his land, into a sword for severing the owner from his land.

This second error seems to be the argument of the complainant, that is to say the enormous financial increment over fair market value available from the private purchaser is sufficient to authorize or even demand sale of the subject. However much the parties might derive from such a sale and however much such financial gain might otherwise be in their interest, those who for whatever reason do not wish to sell have a right not to sell so long as a partition may be conveniently made. The presumed advantages of financial reward can neither set at naught the rights of other co-owners to retain their ownership of the land nor overcome the necessity to abide by the self-contained limitations of § 8.01–83 in its conferral of the special statutory jurisdiction to sell land as a substitute for actual partition. Exception to the commissioner's report having been sustained, provision for actual partition is in order. The Court proposes to appoint three commissioners, one a surveyor, to effect a partition among the co-owners and report thereon to the Court for its consideration.

The Court has given due consideration to complainant's motion to reconsider, and it is denied.