# Richmond

## Ella Nickels v. Alta Mae Nickels, Et Al.

November 28, 1955.

Record No. 4427.

Present, Hudgins, C. J., and Spratley, Buchanan, Miller, Smith and Whittle, JJ.

The opinion states the case.

*A. T. Griffith*, for the appellant.

*S. B. Quillen* and *I. M. Quillen*, for the appellees.

Smith, J., delivered the opinion of the court.

This is a suit for partition of a tract of 22.5 acres of land, located in Russell county, formerly jointly owned by W. C. Nickels and his son, F. M. Nickels. W. C. Nickels died testate in 1952, leaving his undivided one half interest in this land to his wife, Ella Nickels, referred to herein as appellant. The son, F. M. Nickels, died intestate in 1952, leaving as his heirs at law, his widow, Alta Mae Nickels and four infant children, referred to herein as appellees. On January 27, 1953, the four children (Ina Mae Nickels, Douglas Nickels, Ray Nickels and Bennett Nickels) by their mother and next friend, who also joined in her own right, filed a bill for partition of the land.

The bill alleged that because of the nature and character of the land, and because of the location of the improvements on the land, partition in kind could not be conveniently made and that the land was not susceptible of partition between the appellees and appellant in any manner other than by sale of the entire tract and a division of the proceeds among those entitled to share therein. The bill also alleged that a sale of the entire tract of land would be for the best interest of the parties. In her answer appellant denied the allegation that the land was not susceptible of partition in kind and alleged that there were claims against the estate of F. M. Nickels, deceased, in excess of the value of his one half interest in the land. Creditors of W. C. Nickels, deceased, filed a petition in the suit, asserting claims aggregating about $750.00.

The court, by decree of June 25, 1953, appointed five commissioners and ordered that they go upon the land and "* * * if practicable, and partition in kind can be conveniently made, with due regards to the rights of all parties concerned, lay off and divide the said tract of land, * * * in two equal parts in value, having due regard to quality, quantity, and value and assign * * *" to appellant one share and to appellees one share. The commissioners were also told that if they could not conveniently partition the land in kind, so as to give the appellant one share and appellees the other share, then they should report this fact to the court, and also report whether the interest of the parties would be promoted by a sale of the entire tract and a distribution of the proceeds.

Pursuant to the directions of this decree, the commissioners reported on July 21, 1953 that due to the location, character and small quantity of land in the tract, it could not be conveniently or equitably partitioned in kind and that the interest of the owners would be promoted by a sale of all the land and a distribution of the proceeds. This report was rejected on November 28, 1953, because a person other than the duly appointed commissioners, through mistake, took the oath and participated in the deliberations of the commissioners.

Upon rejection of this report, the court entered a decree substantially the same as its decree of June 25, 1953, naming five new commissioners, four of whom, on December 11, 1953, reported that they had "reached a decision on a divide of the land." These commissioners, without filing a survey map or plat with their report, described the dividing line as running from a tree at the rear of the tract to another tree on the front. It appears from the evidence and a plat later made of the property that appellant was assigned 8.9 acres of land and a dwelling house and certain improvements thereon with the right of access to a spring on the share assigned the appellees. The remainder of the tract, 13.6 acres, on which there were no improvements, was assigned the appellees with a right of way over the share assigned appellant.

Appellees excepted to this report primarily on the grounds that: the land is not susceptible of partition in kind; it would be to the best interest of all parties for the land to be sold as a whole and the proceeds distributed; the value of the land assigned appellant is worth more than half the value of the entire tract; the report is indefinite, incomplete and does not locate the right of way nor define appellant's right to use the spring.

On May 17, 1954 the exceptions to this report were sustained and the report of the commissioners rejected, the court finding that the land sought to be partitioned "* * * cannot be conveniently partitioned in kind between the parties entitled to the same, having due regard to the rights and interests of all parties in interest and being of the opinion that it would be to the best interest of all parties concerned, and that their interest would be promoted by a sale of the entire tract of land." This decree also named special commissioners to sell the land as a whole and report to the court, to which decree appellant excepted.

The special commissioners appointed to sell the land reported on

September 7, 1954 that it had been sold for $1,500. Exceptions to this report of sale were overruled on October 27, 1954, and a decree entered confirming the sale and referring the cause to a special commissioner to make, state and report certain accounts and matters necessary to a final disposition of the claims filed in the case. Appellant excepted to the entry of this decree, and we granted an appeal.

While appellant argues that the trial court did not have the authority to overrule the findings of the commissioners, the main issue presented for our determination is whether the evidence was sufficient to warrant the court in setting aside the commissioners' report of December 11, 1953 and ordering that the land be sold and the proceeds distributed.

In the recent case of *Cauthorn* v. *Cauthorn*, 196 Va. 614, 85 S. E. (2d) 256, it was pointed out that Code, §§ 8-690 and 8-692 create and confer special statutory jurisdiction upon courts of equity for the partition and sale of land, and that substantial compliance with those statutes is required. In discussing these sections of the Code, we said that § 8-690 "simply confers upon the courts of equity the same powers exercised by the common law courts in the partition of land and, in addition, authorizes courts of equity to settle all questions of law affecting legal title to the land involved. But this section does not authorize a court of equity to sell or allot any undivided interest in land." 196 Va., at page 618. As there stated, this power is conferred upon courts of equity by Code, § 8-692, which, as amended by Acts 1950, p. 467, provides as follows:

"When partition cannot be conveniently made, the entire subject may be allotted to any one or more of the parties who will accept it, and pay therefor to the other parties such sums of money as their interest therein may entitle them to; or in any case in which partition cannot be conveniently made, if the interest of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, the court, notwithstanding any of those entitled may be an infant or insane person, may order such sale, or an allotment of a part thereof to any one or more of the parties who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to, and a sale of the residue, and make distribution of the proceeds of sale, according to the respective

rights of those entitled, taking care, when there are creditors of any deceased person who was a tenant in common, joint tenant, or coparcener, to have the proceeds of such deceased person's part applied according to the rights of such creditors."

Hence, the power of the court to allot all or a part of the land or to sell all or a part thereof is in all cases dependent upon a judicial determination from the record that "partition cannot be conveniently made." In addition to this finding that partition cannot be conveniently made, the power of the court to allot part of the land and sell the residue or to sell the entire subject and distribute the proceeds is dependent upon the further judicial determination from the record that "the interest of those who are entitled to the subject or its proceeds will be promoted" by such disposition.

If the property is found to be divisible in kind, any co-owner has the right to insist that partition be so made, and therefore the primary question in every suit for partition is whether a division in kind may be conveniently made. In *Phillips* v. *Dulaney*, 114 Va. 681, 684, 77 S. E. 449, decided in 1913, this court said:

"The more usual practice in suits for partition is for the court to appoint five commissioners (any three of whom may act) to make partition. These commissioners are sworn, and may view the land to be partitioned, call to their aid the services of a surveyor, and examine witnesses. They make their report in writing, and generally should return with it a survey and plat showing the metes and bounds of the property and the several allotments. The Acts of 1830-'31, p. 99, required the appointment of such commissioners and the revisors of the Code of 1849 reported a provision retaining commissioners, but simplifying, in other respects, the procedure formerly required in suits for partition. (See Report of Revisors, p. 640, ch. 124, sec. 4) But that provision was stricken out by the legislature (Code 1849, ch. 124, p. 526), and there is no such requirement in the present statute. Virginia Code 1904, sec. 2562."

Likewise, in the present statute, Code, § 8-692, the procedure for determining whether a division in kind can or cannot be conveniently made is not provided for and therefore the courts are left free to adopt such methods of procedure as may be best suited to meet the exigencies of the particular case. Thus, the court may in its sound discretion determine this issue from the evidence before it or it may call to its assistance a master in chancery or a special

board of commissioners. But in its final analysis the question must be left to the determination of the court upon the evidence as disclosed by the record. *Cauthorn* v. *Cauthorn, supra; Phillips* v. *Dulaney, supra; Stevens* v. *McCormick,* 90 Va. 735, 19 S. E. 742; *Zirkle* v. *McCue,* 26 Gratt. (67 Va.) 517; *Howery* v. *Helms,* 20 Gratt. (61 Va.) 1.

In the instant case no effort was made to invoke the provisions of Code, § 8-692 for the allotment of all the land to one party who would accept it and pay therefor its value to the other parties, or allotment of part and sale of part. No issue is presented as to the names, number and interest of the parties who are entitled to share in the land or the proceeds, nor is there any issue presented as to the rights of creditors in the land. Furthermore, no question is raised as to the procedure or validity of the sale. Hence, our review of the case is confined to the inquiry of whether the evidence is sufficient to support the court's finding that (1) partition of the land in kind could not be conveniently made and (2) that the interest of the parties would be promoted by a sale of the land and distribution of the proceeds.

The evidence on the exceptions to the reports of the two commissions was heard ore tenus by the court. It appears from the record that the division in kind made by the second commission gave appellant property worth more than twice the value of that given the appellees. Furthermore, no substantial evidence was offered to support the division in kind nor to refute the great preponderance of the evidence that the two tracts so divided were not equal in value.

Several persons who were familiar with the land and all of the persons who had served on the two commissions were called as witnesses. The members of the first commission, except one who changed his opinion after the report was formulated, were of the opinion that partition could not be conveniently made and that a sale of the land as a whole would be for the best interest of the parties. Although the members of the second commission reported a division in kind, the majority of them testified that they believed a sale of the entire tract would be for the best interest of the parties. The reasons given by these commissioners for their contradictory positions were that they understood that the decree required them to divide the land in kind. It also appears that more than ten witnesses testified that the best interest of the parties demanded there

be a sale of the land as a whole. The record does not contain a clear description of the property, but it appears from the testimony of many witnesses that the land is steep and of a poor quality and that only a very small portion of it is suitable for grazing or cultivation. The dwelling house and out buildings assigned appellant constitute about half the value of the entire tract and are located on that part of the land which is most valuable. The tract assigned the appellees is very steep and the rear is inaccessible except by a route over the tract assigned appellant. Hence, there was ample evidence to support the court's rejection of the report and its findings that partition in kind could not be conveniently made and that it would be to the best interest of those interested in the land to make sale thereof and distribute the proceeds.

An issue is presented in the briefs as to the ownership of a crop of tobacco raised on the land but this question was not fully developed in the trial court and will not be considered here, but may be heard before the special commissioner named in the trial court's decree of October 27, 1954.

For the reasons stated the decree of the trial court setting aside the commissioners' report dividing the land in kind and ordering that it be sold and the proceeds distributed, is affirmed.

*Affirmed.*