FRED M. SENSABAUGH, JR.

v.

ALFRED C. SENSABAUGH, ET AL.

Record No. 831169

GEORGIE C. SENSABAUGH

v.

ALFRED C. SENSABAUGH, ET AL.

Record No. 831170

FRED M. SENSABAUGH, JR.

v.

ALFRED C. SENSABAUGH, ET AL.

Record No. 831363

October 10, 1986

Present: All the Justices

*Richard Cullen (Thomas H. Tullidge*, on briefs), for appellants (Record Nos. 831169, 831170 and 831363).

*Thomas G. Bell, Jr.; W. Wayne Heslep (Frankie C. Coyner; Timberlake, Smith, Thomas & Moses; Natkin, Heslep & Natkin*, on brief), for appellees (Record Nos. 831169, 831170 and 831363).

THOMAS, J., delivered the opinion of the Court.

These three appeals arise out of a dispute over the partition of approximately 232 acres of land located in Rockbridge County. In May 1971, Fred M. Sensabaugh, Sr. died intestate, seized of the real property here in dispute. He left a widow, who was his second wife, Agnes Campbell Sensabaugh, and two sets of children. In September 1978, Alfred C. Sensabaugh (Alfred) and his mother, Agnes, filed a Bill of Complaint in which they asked the court to order the sale of the property and to divide the proceeds. Fred M. Sensabaugh, Sr.'s heirs at law were named as defendants.

The principal protagonists in this matter are Alfred and Fred M. Sensabaugh, Jr. (Fred). They are half brothers who each own an 11/26ths interest in the property. Two sisters, Dorothy Sensabaugh Humphries and Mary Sensabaugh Carpenter who each own a 2/26ths interest in the property, have aligned themselves with Alfred and join in his request to sell the land in lieu of partition. Fred, who lives near the subject property, requested that the land be partitioned in kind.

By order dated October 3, 1979, the matter was referred to a commissioner in chancery. The commissioner was directed, among other things, to determine "[w]hether or not the subject real estate can be divided in kind among the owners thereof without a material decrease in the value of the share of each."

The commissioner scheduled an *ore tenus* hearing for November 16, 1979. He issued a report on November 20, 1979 (the "First Report"). In this report, the commissioner stated that the parties had reached agreement among themselves concerning the disposition of the property; he wrote as follows:

> At the time, date and place stated for the hearing, Counsel for the respective parties represented unto the Commissioner that an agreement had been reached acceptable to the parties in this cause, complainants and defendants, and that evidence need not be taken and the inquiries propounded to the Commissioner in the . . . Decree of Reference required no response, but that the agreement should be reported out by the Commissioner as binding upon all parties.

The commissioner set forth several findings, the most important of which for the purposes of this appeal being that "[t]he subject real estate is susceptible to partition in kind."

Although the First Report stated that the land was susceptible to partition in kind, in August 1981, Fred filed exceptions to that report. Fred contended that he was not a party to any agreement and that he had not authorized his counsel to enter any such agreement as described by the commissioner. Fred did state in his exceptions, however, that he agreed with the report to the extent that it said the land was susceptible to partition in kind.

By order dated September 15, 1981, the trial court made reference to Fred's attacks upon the First Report and concluded that because of Fred's allegations the trial court could not act upon the First Report. The trial court, in essence, declared the First Report void and re-referred the case to the same commissioner upon virtually the same instructions.[1]

Upon the re-referral, the commissioner heard evidence *ore tenus* on September 25, 1981, and October 19, 1981. James E. Mays, a real estate broker was the only witness to testify on behalf of Alfred. He was questioned as follows concerning whether the land was susceptible to partition:

Q. Mr. Mays, do you have an opinion as to the ability to divide this property in kind, and how such a division might affect the value of the whole parcel?

A. Yes; you can divide anything. It has an awful lot of drawbacks for dividing. There are already some rights of way through it. And the more parcels you divide off, the more problems you'll get into, with the upkeep and maintenance of the road and things . . . . In my opinion, it would be . . . It might be cut in maybe about half, would appeal to someone, because there is some access to Game Commission land back there. But that would be . . . Like I said, I think probably if it was sold, it would be better — it would bring more across the board for the entire piece of property — now, this is my opinion — rather than splitting it.

Q. In other words, you think it would bring a higher price if sold as a whole.

[1] By the time of the re-referral Agnes Campbell Sensabaugh, the widow, was dead. Therefore, the instruction to determine her dower interest in the property was necessarily deleted from the order of reference.

A. Yes, sir, I do.

It is noteworthy that nowhere in his testimony did Mays state that the land could not be *conveniently* partitioned.

Dorothy Humphries testified that in her opinion the land would not be worth as much "split." She admitted, however, that ten years earlier she had been of the opinion that the land itself could be divided.

Fred testified on his own behalf. He said that he could see no reason why he could not receive his interest from a division of the land itself.

The commissioner issued his new report on April 19, 1982 (the "Second Report"). In his Second Report, the commissioner concluded that the land could not be partitioned in kind. In reaching this conclusion, the commissioner relied in large part upon the testimony of Mays. The commissioner characterized Mays' testimony as follows: "It also was the opinion of this witness that the real estate could not be partitioned in kind without a decrease in the value of the interests of the respective owners." The commissioner then gave the following explanation for his conclusion that the land could not be partitioned in kind:

> It is the opinion of the Commissioner that the real estate not having any frontage on a public road and with two owners owning almost 85 percent of the fee and two other owners the remaining 15 percent that the subject real estate *could not be divided in kind without a material decrease in the value of the share of each*, particularly the two smaller interests.

> The crux of what appears to be the principal dispute in this suit is the contention of one of the respondents, Fred M. Sensabaugh, Jr., that the subject real estate can be partitioned in kind. The thrust of the argument of this respondent is that since he owns real estate abutting the subject, it would be to his advantage to have his interest partitioned off in such a manner that what was received would adjoin land he already owns. However, this approach does not take into consideration the equitable considerations due the other owners *who have the right to insist that the entire tract be utilized in the realization of full value.*

(Emphasis added.) Nowhere in the commissioner's report is there a statement that the property cannot be *conveniently* partitioned in kind.

On April 28, 1982, Fred filed exceptions to the Second Report. Fred contended that there was evidence that the property could be conveniently divided in kind. By decree dated August 18, 1982, the trial court overruled all exceptions to the Second Report and ordered that the property be sold. On August 2, 1983, the trial court approved the sale of the property in the amount of $55,200.

In addition to his direct attack upon the Second Report, Fred and his wife, Georgie C. Sensabaugh, filed separate declaratory judgment actions collaterally attacking the order of sale as void. The two declaratory judgment actions were summarily dismissed by the trial court on the ground that the matters raised therein had been fully and fairly litigated in the original proceeding. Georgie's suit was dismissed on the additional ground that she had no standing to file her suit.

Fred appealed from the judgment in the original suit and from the judgment dismissing his declaratory judgment action. Georgie appealed from the judgment dismissing her declaratory judgment action. We granted all three appeals. However, our disposition of the matters raised in the partition suit make it unnecessary for us to address any of the issues raised in the appeals of the declaratory judgment actions.[2] In our opinion, the trial court erred in ordering the sale of the subject property.

In the appeal from the judgment in the partition suit, Fred advances five assignments of error, four of which are tied directly to the trial court's ordering the property sold. Since we are of opinion that the sale should not have been ordered, it is unnecessary to address each specific assignment of error challenging the sale.

With regard to the central issue whether the property should have been ordered sold, Fred advances several arguments. First, he submits that it is the policy of the Commonwealth that land be kept in an owner's possession if at all possible. Second, he contends that before land can be sold in lieu of partition the burden is upon the proponent of the sale to prove that the land cannot be

---

[2] During oral argument, counsel for the respective plaintiffs in the declaratory judgment actions stipulated that if the Court reversed the decision in Record No. 831363, the main partition suit, then the issues raised in the two declaratory judgment actions would be moot. We agree. Accordingly, we will dismiss as moot the appeals in Record Nos. 831169 and 831170.

conveniently partitioned. Third, he contends that the question of convenient partition does not turn on whether the land will bring more money if sold as a whole but upon the physical characteristics of the land itself. Finally, he submits that Alfred did not meet his burden of proof.

Even though this is a case in which the commissioner in chancery heard evidence and issued a report approved by the trial court, we will reverse because the commissioner and the court were plainly wrong in concluding that this property should be sold. *See Seaboard Bank* v. *Revere*, 209 Va. 684, 688, 166 S.E.2d 258, 261 (1969).

■ The sale of property in lieu of partition is a matter long controlled by statute in Virginia. Code § 8.01-83, in effect at the time of the proceedings below, reads in pertinent part as follows:

> *in any case in which partition cannot be conveniently made,* if the interest of those who are entitled to the subject, or its proceeds, will be promoted by a sale of the entire subject, or allotment of part and sale of the residue, the court . . . may order such sale, or an allotment of a part thereof. . . .

(Emphasis added.) By its terms, the statute does not permit sale except where it is first determined that "partition cannot be conveniently made."

■ We have repeatedly held that a court has no power to order the sale of property without first determining that partition in kind *cannot* be conveniently made and then determining that sale will be in the best interest of all the parties. *See Nickels* v. *Nickels*, 197 Va. 498, 90 S.E.2d 116 (1955); *Cauthorn* v. *Cauthorn*, 196 Va. 614, 85 S.E.2d 256 (1955); *Bridge* v. *Snead*, 151 Va. 383, 145 S.E. 338 (1928). *Bridge* bears some factual similarities to the instant appeal. There, the owner of a 1/5th interest in property wanted his land laid off in kind. The owners of the other 4/5ths wanted the property sold. The commissioner concluded that the property could be divided into five equal parcels all with access to a highway. However, the commissioner recommended that the land be sold as a whole; he was concerned that a division in kind would depreciate the value of the entire tract of land. The trial court confirmed the commissioner's report and ordered the land sold. We reversed.

■ We stated in *Bridge* that the burden was on the proponent of sale to prove all the prerequisites to sale. We stated that proof of the prerequisites to sale must affirmatively appear in the record. Then we discussed what we described as a fundamental principle of partition suits; we wrote as follows:

The fundamental rule in such cases, which in this jurisdiction has been accepted but not discussed at length, is thus stated by Dr. Lile: "*If the property be divisible in kind, any co-owner has the right to insist that partition be so made. The majority of the co-owners in such case may not insist on a sale against the will of any of their fellows.*" Lile's Eq. Pl. & Pr., section 389, page 196.

The primary question in suits for partition is whether or not a division in kind is convenient, practicable and for the best interest of the parties; the secondary question is, whether their interest will be promoted by a sale in whole or in part.

151 Va. at 389-90, 145 S.E. at 340-41 (emphasis added).
■ Also pertinent is our discussion in *Cauthorn* where we wrote of the "sacred right" of property and stated that the failure to make the threshold finding that partition could not be conveniently made rendered an order of sale void. In *Cauthorn*, though the commissioner in chancery found that partition was feasible, he recommended sale of the property. The trial court affirmed the commissioner's report. We reversed.
We wrote as follows about the nature of partition pursuant to the statutory predecessor to Code § 8.01-83:

We have held in numerous cases that these statutes create and confer special statutory jurisdiction upon courts of equity for the partition and sale of land. Failure to substantially comply with the provisions of the statutes is fatal to the proceedings. Equity has no inherent jurisdiction to order a sale of land for the purpose of partition. "*Prima facie* each party is entitled to actual partition. . . .

"A sale cannot be decreed in a partition suit unless it appears by report of commissioner or otherwise by the record that partition cannot be conveniently made and also that the

interest of those interested in the land or its proceeds will be promoted by sale."

. . . .

*The authority of the court to allot or to sell land in a partition suit is predicated upon its being judicially determined from the record that "partition cannot be conveniently made."* The existence of this fact must be determined by the court before ordering the sale or allotment.

196 Va. at 619, 85 S.E.2d at 259 (emphasis added) (quoting 14 M.J. *Partition* § 26 at 161).

■ In this case, there was no evidence that partition could not be conveniently made. Mays did not make any such statement in his testimony. Indeed, the commissioner does not find in his Second Report that partition could not be conveniently made. What the commissioner said was that the property could not be divided in kind without a material decrease in the value of the share of each. To say that property will bring less money if not sold as a whole is a far cry from saying that it cannot be laid off in kind. Interestingly, there was no testimony concerning the difference in value of the land if sold as a whole compared to a partial sale. There was simply the conclusion of Mays that the land would bring more if sold together. Such evidence is insufficient to deprive a co-owner of his "sacred right" to property.

■ Throughout the hearing before the commissioner, the commissioner made comments that suggest a mistaken view of certain of the basic principles surrounding partition suits. For example, at one juncture, the commissioner advised Fred's counsel as follows: "Well, you've got to establish that a convenient partition can be made." Fred was the defendant. Alfred was the complainant. Fred did not have to prove that partition could be conveniently made. Quite to the contrary, Alfred was bound to prove that partition could *not* be conveniently made.

■ Further, at another point in the proceeding, the commissioner commented that before land can be partitioned in kind such has "got to be to the best interest of all parties . . . ." This statement turns the law around. The rule works differently than suggested by the commissioner. First the court must conclude that the property cannot be conveniently partitioned. Next, the court must decide whether sale is in the best interest of the parties. If

the first step is not reached the second step cannot be taken. Here, Alfred's case did not reach the first step.

■ Alfred's argument in support of the order of sale is essentially that the question whether the land will bring more money when sold as a whole is pertinent to the issue whether the land can conveniently be partitioned. According to Alfred, if dividing the property in kind will cause a diminution in the value of the property when compared to selling the property as a whole then a court can conclude that the property cannot be conveniently partitioned in kind. Even if we assume, without deciding, that Alfred's approach is correct, it will not suffice to change the result here. This is so because there is insufficient evidence from which to determine the value of the property where a portion of it is laid off in kind while the balance is sold. Mays simply said that the land would bring more if sold as a whole. In addition, he gave an overall appraisal of the land and improvements. No one testified as to the value of the land after the partition that was proposed by Fred. We are of the view then that even if the value with partition and without partition is relevant to the convenience of the partition, a decision in that regard cannot be made on the basis of a conclusory statement that land if sold as a whole would bring "more money."

Nor is Alfred's position aided by his reliance upon *Nickels* v. *Nickels*, 197 Va. 498, 90 S.E.2d 116 (1955). That was a case in which we held that sale of the property was appropriate even though a group of commissioners reported that the land could be partitioned in kind. The trial court rejected that conclusion and we affirmed. We held in *Nickels* there was ample evidence to support the court's rejection of the commissioner's report. We pointed out that the proposed partition would result in one piece of property worth twice as much as the other. Further, in an *ore tenus* hearing the very commissioners who had concluded that the land could be laid off in kind testified that it was their opinion that the land should be sold but they had been under the impression from the decree of reference that they were *required* to divide the land in kind. The facts of *Nickels* are totally unlike those in the instant appeal.

■ We also reject Fred's contention that the trial court erred with regard to its ruling on the question of waste. The evidence supports the trial court's finding that there was no waste and we will affirm the trial court's decision in that regard.

 With regard to the central issue concerning sale of property in a partition suit, we hold that where, as here, a party seeking sale of property in lieu of partition fails to prove that the land *cannot* be conveniently partitioned then it iserror for the trial court to order the sale of the subject property. Therefore, on this issue, we will reverse the judgment of the trial court and remand the case with directions to the trial court to order Fred's interest in the property laid off in kind and for such further proceedings, consistent with this opinion, as may be required.

Record No. 831363 - *Affirmed in part,
reversed in part
and remanded.*
Record No. 831169 - *Dismissed.*
Record No. 831170 - *Dismissed.*