# CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Barbara Carr Mato

v.

Jose M. Mato

March 9, 1988

By JUDGE WILLIAM H. LEDBETTER, JR.

This case began as a suit for divorce on the ground of desertion, filed by Mrs. Mato in June of 1987. Mr. Mato filed a cross-bill on the ground of cruelty. Later, with leave of court, Mrs. Mato amended her bill to allege adultery.

Pendente lite hearings were conducted on July 13, 1987, and September 21, 1987, as a consequence of which, inter alia, Mrs. Mato was awarded pendente lite spousal support.

The parties then proceeded to take evidence by depositions. During one of those sessions the attorneys discovered that Mr. Mato was married to someone else at the time these parties were wed. (It should be noted that the parties themselves knew or had reason to know of the dubious status of their marriage. The record shows that in 1981, Mrs. Mato filed a suit for annulment in Fairfax County, on the same ground, but the suit was inexplicably discontinued.)

This development caused Mr. Mato to file a motion to dismiss the bill and cross-bill on the ground that the marriage is void. In her response to the motion, Mrs. Mato concedes that the marriage is invalid but argues that the court is obligated to retain jurisdiction for the purpose of making determinations and adjudications pursuant to Virginia Code § 20-107.3 (the "equitable distribution" statute).

After hearing evidence and arguments of counsel on February 29, 1988, the court made the following factual determinations:

1. The parties solemnized their marriage in Virginia on July 2, 1977.

2. At that time, Mr. Mato was married to Jacquelyn M. Mato.

3. Jacquelyn M. Mato was (and still is) alive and, in fact, terminated her marriage to Mr. Mato by divorce in Columbia County, New York, on July 13, 1977.

4. The parties have not effected or attempted to effect a remarriage.

Based upon those findings of fact, the court ruled that the marriage of the parties of July 2, 1977, is void ab initio, and that the pendente lite order entered on July 20, 1987, should be vacated except that Mrs. Mato would continue to enjoy the exclusive use of the marital residence pending further proceedings herein.

The court deferred a ruling on the remaining issue, viz: whether the case should be dismissed or retained on the docket for determinations and adjudications under Section 20-107.3. Counsel have filed memoranda in support of their positions, and this opinion addresses that issue.

There is no doubt that this marriage is void. *See* Virginia Code § 20-38.1, § 20-43, and § 20-45.1(a). It is not merely voidable; rather, it is absolutely void ab initio. No decree of annulment, judicial declaration, "or other legal process" is required to render the marriage a complete nullity. Virginia Code § 20-43; also, *Hager v. Hager*, 3 Va. App. 415 (1986).

Virginia Code § 20-107.3 requires that "[u]pon decreeing the *dissolution of a marriage*, and also upon decreeing a divorce . . ." the court, upon motion of either party, shall make certain determinations concerning the property of the parties. (Emphasis added.)

Identical prefatory language appears in § 20-107.1, the statute dealing with decrees as to maintenance and support of spouses (i.e., alimony), and in § 20-107.2, the statute dealing with decrees as to custody and support of minor children.

The phrase, "dissolution of a marriage" is not synonymous with "divorce" in these statutes. The terms are used distinctively and conjunctively, not interchangeably. It

is obvious that the General Assembly intended that these statutes be used in cases other than those in which final decrees of divorce are entered. *Henderson v. Henderson*, 187 Va. 121 (1948). It follows, then, that the phrase, "dissolution of a marriage," may apply, in appropriate circumstances, to annulments.

Does it follow that courts are mandated to apply these statutes where the marital relationship is determined to be absolutely void?

As for § 20-107.1, the answer to the question is in the negative. It has been held that the courts of the Commonwealth have no power to award spousal support where the marriage is void ab initio. "A marriage void ab initio is no marriage at all." *Bray v. Landergren*, 161 Va. 699 (1934). The *Bray* case is consistent with the great weight of authority which holds that permanent alimony should not be allowed where the marriage is a nullity.

On the other hand, as for § 20-107.2, the answer to the question is in the affirmative. Thus, even when the marriage is a nullity, the court has jurisdiction to make decrees as to the care and custody of the minor children of the marriage. *Henderson, supra.* The reason for this is obvious. Children of marriages deemed absolutely void are nonetheless legitimate. Virginia Code § 20-31.1. As innocent third parties to the invalid marital relationship, and as wards of the courts of equity, their care and custody should be addressed within the context of the marital dissolution.

Turning now to § 20-107.3, it is apparent that the statute presupposes a marriage other than one that is absolutely void ab initio. A basic premise of the legislative scheme is that the parties will have rights and interests in "marital property" (a defined term), and each of them may own items of "separate property" (a defined term). All other incidents of equitable distribution flow from the initial task of determining which property is "marital" and which is "separate."

If the marriage is absolutely void, a nullity "without . . . legal process," Virginia Code § 20-43, there can be *no* marital property. A judicial finding that the marriage is absolutely void is not so much a decree which renders a marriage void as a judicial finding or declaration that the marriage never in fact had any legal existence and

that the parties never were married. It operates ab initio, relating back to the time of the marriage ceremony. The parties stand as though they were never married. Their property rights are what they would have been had there been no marriage. All property rights relating to or arising out of a marriage are done away with. In short, in these rare cases of marriages void ab initio, everything depending on the marriage falls with the marriage (except for the legitimacy of children of the marriage, which is now expressly conferred by statute).

If there can be no marital property resulting from a marriage which is absolutely void under § 20-43, what possible actions can the court take under § 20-107.3 to assist the parties in adjusting their property rights? The items of property cannot be categorized as "marital" or "separate." No monetary award could be granted. No transfers of property or partition could be decreed, since such authority is limited to "marital property which is titled in the names of both parties." Section 20-107.3(C).

The court recognizes the general rule of equitable jurisprudence that a court of equity having taken jurisdiction of a cause will ordinarily retain it for all purposes connected with the principal controversy, and will award relief which accomplishes full justice and settles all matters in dispute. For the reasons noted above, however, no relief is available under § 20-107.3 to parties of a marriage void ab initio. *See Divorce and Separation*, 24 Am. Jur. 2d, § 876, at footnote 79. An attempt to apply the provisions of the statute to a "marriage" which never existed would create word games, procedural distortions, and other absurdities.

This marriage, bigamous under § 20-43 and therefore absolutely void without any legal process, is declared void ab initio. The motion to dismiss is granted, all previous orders herein will be vacated, and the case will be stricken from the docket.