## CIRCUIT COURT OF CAROLINE COUNTY

Marshall R. Snead

   v.

John R. Giles

March 6, 1989

Case No. 85C-49

By JUDGE WILLIAM H. LEDBETTER, JR.

This case consists of two parts: one, a suit to partition real estate; the other, an accounting among co-owners of a defunct business venture.

In September, 1982, Snead, Giles, and a third person (Woodson) decided to form an auto salvage business. Giles owned and operated such a business, Bud's Auto Salvage, in Bowling Green. He was acquainted with Woodson, an Arlington resident who ran an auto removal and hauling business there. After preliminary discussions, between Giles and Woodson, Woodson brought Snead, a relative, into the picture. The three agreed to purchase land with a building and to form the business venture. Pursuant to their understanding, Giles would provide expertise, transfer assets from his salvage yard to the new business, and operate the venture; Woodson was to "put up some money" and supply autos from time to time from his sources in Northern Virginia; Snead would contribute cash as "an investment." Nothing was reduced to writing, and the agreement among

them, to say the least, was imprudently vague and incomplete.

They acquired a 2.75-acre parcel of land, improved with a building, on U.S. 301 in Caroline County. The purchase price was $86,000.00. Although bank financing was discussed, it developed that the purchase price was paid with $80,000.00 of Snead's money and $6,000.00 from Woodson. Woodson gave Snead a promissory note for $22,666.00, and Giles gave Snead a promissory note for $28,666.00. (No payments were ever made on the notes.)

The business, referred to in the litigation as "Hilltop," began operation in November, 1982. Giles ran the business. Woodson contributed cars and trucks until he lost his primary source of supply. He contributed no money to the venture. Snead provided several infusions of cash.

The business ceased in the summer or fall of 1983. Giles returned to his former business, Bud's Auto Salvage. Snead took possession of the real estate. Woodson lost interest in the whole affair and conveyed his interest in the real estate to Snead in satisfaction of his note.

Snead and Giles agree that they own the real estate as tenants in common, Snead having a two-thirds interest and Giles a one-third interest. They also agree that the property has an appraised value of $106,000.00. Snead has offered to purchase the property for $106,000.00; Giles has "upped the ante" to $109,500.00.

As for the business venture, Snead and Giles claim that Woodson has "abandoned" his interest and that accounts should be settled between the two of them. They disagree in numerous respects as to how the accounts should be settled.

### Pleadings

Snead filed a bill of complaint on June 14, 1985, requesting partition of the real estate. Giles answered, and in his prayer, requested a settlement of the "Hilltop" business accounts. The matter was referred to a commissioner in chancery on January 22, 1986.

The commissioner conducted hearings and took evidence on March 27, 1986, April 17, 1986, May 15, 1986, and August

29, 1986. The record is voluminous. The parties then submitted memoranda.

The commissioner filed her report on December 7, 1988. Both parties filed exceptions to various parts of the report, and the court heard arguments on the exceptions on February 8, 1989.

## Settlement of Accounts of the Business Venture

The evidence is clear that Snead, Giles, and Woodson joined together to carry on an auto salvage business for profit. Although they did not commit their agreement to writing, and the terms of their agreement are sketchy, their association was, by definition, a partnership. *See* Virginia Code § 50-6(1) and § 50-7.

A partnership is defined as two or more persons joining together their money, talents, goods, or labor, or all of them, under an understanding or agreement that there will be a communion of profit and loss among them in carrying on a lawful business. 14A M.J., *Partnership*, sect. 2. The understanding or agreement may be written or oral, express, or implied, and need not be in any particular form. 14A M.J., *Partnership* § 7.

Both parties agree that their business association should be classified as a partnership, and the commissioner so held. The commissioner's ruling on this point, then, is confirmed.

Nothing is more clearly established in partnership law than that partners are fiduciaries *inter se*, and that each partner, under proper circumstances, has a right to an accounting from all other partners as to partnership affairs.

The settlement of partnership accounts is within the exclusive jurisdiction of equity. 14A M.J., *Partnership* sect. 61. However, as a general rule, equity will not entertain a bill for an accounting among partners *unless a dissolution and winding up are requested*, and *every partner is made a party*. 14A M.J., *Partnership*, § 62 and § 64. In fact, it is said that equitable intervention is justified in such cases only because the accounting is ancillary to dissolution or to a division of assets where the firm is already dissolved. Lile, Notes on Equity Jurisprudence, pp. 281-282 (1921).

Here, the firm already stands dissolved. The business was terminated more than five and a half years ago. Although no formal dissolution and winding up was conducted, the evidence sufficiently proves a dissolution. See Section 50-31(1)(a) and (b).

Nevertheless, no affirmative pleading has been filed in this suit alleging a dissolution and requesting a division of net assets. As noted above, this is a partition suit, and the only mention of the assets of the business is contained in the respondent's answer, a responsive pleading.

More important, one of the partners is not a party to the suit. Snead and Giles seem to ignore Woodson on the theory that he has "abandoned" his interest in the business. Woodson testified as a witness for Snead and said nothing about abandoning his interest. In fact, he said that everything was "just left in limbo." (Transcript of 4/17/86 hearing pp. 82-94.)

The court is interested in seeing this litigation, which has been in progress for about four years, brought to a speedy conclusion. However, the court will not settle the accounts of the partners until all partners are properly before the court.

Accordingly, Giles should file an appropriate cross-bill, joining Woodson as an additional party, affirmatively requesting a settlement of the accounts of this business venture. After Woodson has had the opportunity to respond, the suit can proceed. If Woodson does not file responsive pleadings or otherwise make an appearance, no further hearings will be necessary and the court will adjudicate the disputed issues and settle the accounts upon the evidence adduced before the commissioner, giving due weight to the factual findings and recommendations in the commissioner's report. If Woodson responds and wishes to be heard, the matter will not be re-referred to the commissioner; instead, to expedite the case, the court will conduct such ore tenus hearings as may be necessary.

### Partition of the Real Estate

Based on the evidence, the commissioner reported that the real estate consists of 2.75 acres on the south side of U.S. 301 in Caroline County, described in Exhibit

A to the bill of complaint; that the property, with improvements, has an appraised fair market value of $106,000.00; and that the property is not reasonably susceptible to division and should be sold. These findings are supported by the evidence, and the commissioner's report with regard to these matters will be confirmed.

The commissioner determined that the real estate is a partnership asset, and she included the real estate in her recommendations for a settlement of the partnership accounts. Both parties disagree.

The real estate is not a partnership asset. It is owned by Snead (two-thirds) and Giles (one-third). Although the property was used by the partnership in connection with the partnership business, the property was not purchased with partnership funds and was never conveyed to the partnership. When property is used by a partnership but is not titled in the name of the partnership or transferred to the partnership in any manner, whether the property is partnership property is primarily a question of intent. Both Snead and Giles say that the real estate was never intended to be partnership property. Therefore, the court rejects the commissioner's finding that the real estate is partnership property and finds that the real estate is owned by Snead and Giles as tenants in common in the proportions stated above.

(The court can properly determine ownership of the real estate without Woodson because Woodson has no interest in the real estate, having conveyed his interest to Snead in 1983.)

The commissioner has reported, in essence, that a division in kind cannot be conveniently made. This finding is a prerequisite to allotment or sale in partition cases. *Nickels v. Nickels*, 197 Va. 498 (1955); *Sensabaugh v. Sensabaugh*, 232 Va. 250 (1986). Neither party has taken exception to the commissioner's finding on this issue, and upon a review of the evidence, the court is of the opinion that the property cannot be conveniently divided in kind.

Next, the court must decide whether sale is in the best interest of the parties. *Sensabaugh, supra.* On this issue, the parties are not in agreement. Snead has offered to purchase the property for its appraised value, $106,000.00. Giles has offered to purchase the property

for $3,500.00 more, but Snead argues that Giles's offer came many months after Snead's original offer and is too late.

The statute permits the court to allot the entire property to one of the parties "who will accept it and pay therefor to the other parties such sums of money as their interest therein may entitle them to." § 8.01-83. However, whether allotment should be decreed is a matter resting within the sound discretion of the court. *White v. Pleasants*, 227 Va. 508 (1984). When more than one of the parties seek allotment of the whole property to himself, the court does not abuse its discretion in refusing allotment to either. *Thrasher v. Thrasher*, 202 Va. 594 (1961); *Shotwell v. Shotwell*, 202 Va. 613 (1961).

Under the circumstances of this case, the court refuses to make an allotment of the property to either party. Instead, a sale would best promote the interest of the parties and would be fair and equitable to both. Therefore, a sale of the whole property will be ordered.

Snead claims that he is entitled to a credit for installing a new roof on the building. Giles argues that, under the circumstances of this case, no such credit is appropriate.

At common law, a writ de reparatione facienda was allowed in certain instances to compel contribution, for repairs between co-tenants. The writ has been replaced in modern times by suit in equity to compel contribution, or such matter may be addressed in a partition suit. 5A M.J., *Co-tenancy* § 27. In Virginia, as a general rule, a co-tenant who has improved or repaired the property at his own expense is entitled in a partition suit to compensation for such improvement or repairs, whether the co-tenant has agreed or not. *Rutledge v. Rutledge*, 204 Va. 522 (1963). However, the right to such compensation or allowance is not absolute. The purpose of the rule is to do justice between the parties, not to inflict injury on the co-tenant, and thus the general rule is not followed if the circumstances do not warrant it.

In this case, Snead took sole and exclusive possession of the property after the business venture failed. He has been in possession ever since. Admittedly, he did not oust his co-tenant from the property, and Giles has taken no formal action to assert a claim to equal use

of the property or otherwise to remedy the situation. Nonetheless, the fact remains that Snead has used and enjoyed the property for years, for his exclusive personal benefit. Obviously, Snead fixed the roof to enable himself to enjoy the use of the premises, not to preserve or enhance the property for the benefit of all.

Further, repairs and improvements made by a tenant in possession may be set off against the rents and profits due from him to his co-tenant. Technically, the expenditures of each year are offset against rents and profits of that year and improvements are capitalized and offset by rents and profits of that year and succeeding years. 5A M.J., *Co-tenancy* § 29.

At early common law, a co-tenant in possession was not liable for rent to the other co-tenants. Each co-tenant had the right to enter and use the land, and it was presumed that the other consented to his use. Under modern authority, this rule has been modified to permit an accounting where a tenant uses the common property to the exclusion of his co-tenants or uses more than his just share or proportion. Under such circumstances, he is accountable to his co-tenants for their shares of the fair rental value of the property so used by him. 5A M.J., *Co-tenancy*, § 22 and § 24; also see § 8.01-31.

The roof repair made by Snead should be offset against the rent for which he should be accountable, thereby effecting a complete setoff between the parties. Such a result is supported by the evidence and the equities of the case. Therefore, Snead is entitled to no credit or adjustment for his expenditures while in sole possession of the property, and Giles is entitled to no rent; or, stated differently, the adjustments offset one another so that there will be no net credit to either party.

The property will be sold, as provided by statute, and the net proceeds will be distributed two-thirds to Snead and one-third to Giles. From Giles's share of the proceeds, the sum of $28,666.00 will be deducted and paid to Snead in satisfaction of the promissory note. If the parties agree, Mr. Jarrell and Mr. Mason may act as special commissioners to advertise and sell the property, subject to approval of the court, as in such cases provided.