## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Jose Manuel Mato

v.

Barbara Birney et al.

January 15, 1992

Case No. C-90–12

By Judge William H. Ledbetter, Jr.

On July 11, 1988, in a divorce suit styled *Barbara Carr Mato v. Jose M. Mato*, this court declared the marriage of these parties void. For reasons explained in an opinion filed in that suit, the court held that it had no authority to make adjudications regarding equitable distribution of the parties' property under Virginia Code § 20–107.3, vacated its pendente lite orders, and dismissed the suit. 12 Va. Cir. 153.

This litigation is a sequel. On January 4, 1990, Mr. Mato filed this suit seeking partition of the parties' jointly-owned residence and various articles of personal property acquired during their cohabitation. Mrs. Birney filed a responsive pleading. On August 6, 1990, the case was referred to a commissioner in chancery. The commissioner conducted evidentiary hearings on October 30 and November 12, 1990. After receiving transcripts of the testimony and memoranda of counsel, the commissioner filed his 42-page report on November 12, 1991.

Mr. Mato took exception to several key rulings and recommendations in the report. The court heard arguments on the exceptions on January 6, 1992, and took the case under advisement. This opinion addresses the disputed issues.

### Factual Background

Mr. Mato and Mrs. Birney participated in a marriage ceremony on July 2, 1977. Apparently, neither party thought at the time that there were any impediments to a valid marriage. In fact, Mr. Mato, a Marine Corps officer, was married to a woman from whom he had been separated for some time, and he remained married to her until she obtained a divorce in New York on July 13, 1977. As a consequence, the Mato-Birney "marriage" was bigamous, and therefore, a nullity.

When Mr. Mato learned a few months thereafter that his marriage to Mrs. Birney had pre-dated the divorce from his former wife, he shared that information with Mrs. Birney. He further told her that he had consulted a JAG officer who advised him that their marriage was nonetheless "legal."

The parties separated for several months in 1980 and 1981. During that time, Mrs. Birney retained an attorney who informed her that her marriage to Mr. Mato was void. Mrs. Birney filed a suit for annulment in Fairfax County Circuit Court. However, the parties reconciled, and the suit was dropped. Aware that their marriage was a nullity, the parties talked about resolemnizing the marriage but never did so.

In 1987, the parties separated for a final time. Mrs. Birney instituted a divorce suit in this court in June of 1987. As explained above, that suit was dismissed on July 11, 1988, when the court declared the marriage void ab initio.

At the time the parties began cohabitation in 1977, Mrs. Birney lived in a house in Springfield with the three children of a prior marriage. Her husband had died in 1972, leaving her the sole owner of that property and various other assets. In addition, Mrs. Birney had received funds, and continued to receive them, as a result of her husband's death. Mr. Mato moved into Mrs. Birney's home.

In 1978, Mr. Mato and Mrs. Birney jointly purchased another home in Springfield. In anticipation of that acquisition, the parties executed an agreement on October 23, 1978, by the terms of which Mrs. Birney would receive the first $53,000.00 of the proceeds of sale of that house when and if it was ever sold and the balance, if any, would be divided

equally between the parties. The reason for the agreement, as explained in its preamble, was the recognition of the fact that the new home would be purchased in large part with money obtained from the sale of Mrs. Birney's home. (Actually, when the parties went to settlement on this house, $43,000.00, not $53,000.00, was put down; nevertheless, the source of the down payment was the proceeds of sale of Mrs. Birney's home.)

The parties lived in the second home (except for a period of separation in 1980–1981) until Mr. Mato was posted to Japan. Upon his return, the parties moved to Arizona. There they purchased a home in March of 1982. They did not sell their Springfield house; instead, they assumed an existing mortgage on the Arizona house and put down approximately $18,000.00 from Mrs. Birney's separately-owned funds in Virginia.

While living in Arizona, Mrs. Birney used between $10,000.00 and $15,000.00 of her separate funds to add a swimming pool and make other improvements to their Arizona home. Otherwise, the parties pooled their monies to pay household expenses, take trips, and maintain the home.

In 1985, they sold their Springfield house. Ignoring the 1978 agreement, they deposited the net proceeds of that sale, approximately $76,000.00, in a joint account in Arizona.

The parties returned to Virginia in March of 1986 and purchased a house in Sheraton Hills East that is the subject of this partition suit. Towards the purchase price of $86,800.00 and closing costs, almost $15,000.00 cash was paid from the joint account in Arizona. A month later, the Arizona house was sold. The net proceeds, approximately $20,000.00, were wired to Virginia. Mrs. Birney immediately placed those funds in a separate account bearing her name only.

After the parties separated in 1987, Mrs. Birney remained in the Sheraton Hills East home.

As for the personal property in dispute, those articles were acquired during the period of cohabitation. They are listed on Exhibit C attached to Mr. Mato's bill and are all in Mrs. Birney's possession. Before the commissioner, the parties agreed that the china set belongs to Mr. Mato and that several items listed on page 23 of the commissioner's report belong to Mrs. Birney. The remaining items are subjects of this partition suit.

### Partition of the Real Estate

Through more than 400 pages of transcribed testimony, accompanied by many exhibits, the parties have attempted to trace practically every dollar that each contributed to their relationship from its formation in 1977. This endeavor is especially important to Mrs. Birney who seeks, in essence, to enforce the terms of the parties' 1978 agreement against the Sheraton Hills East property and to recoup other monetary contributions made from her separate funds. This effort has not been lost on Mr. Mato, who has sought to repel it by demonstrating his monetary contributions and by presenting evidence that Mrs. Birney "abandoned" or "waived" her rights under the 1978 agreement when the proceeds from the sale of the Springfield house were deposited in a joint account and drawn upon for various mutually-beneficial purposes.

Before addressing these and related arguments, it is helpful to review the elementary principles of partition. Further, in order to appreciate the court's rulings, it is essential that the litigants and counsel remain mindful that this is *not* an equitable distribution proceeding under § 20–107.3; many if not most of the factors enumerated in that statute are immaterial to this litigation; and, for all practical purposes, this proceeding must go forward as a partition suit between co-tenants who have a relationship not much different in the eyes of the law than that of former friends or business associates who have had a "falling out" and look to the courts for a division of their jointly-owned property.

Partition is an equitable remedy, governed by statute. Virginia Code § 8.01–81 et seq. A court having general equity jurisdiction has authority to compel partition of real estate at the instance of one of the co-owners, Virginia Code § 8.01–81, and to settle all questions of law affecting legal title to the land involved. *Effinger v. Hall,* 81 Va. 94 (1885); *Cauthern v. Cauthern,* 196 Va. 614 (1955).

No one disputes Mr. Mato's right to compel partition. Because the parties were never married, they cannot own property as tenants by entirety; therefore, their joint ownership of the Sheraton Hills East residence is partitionable. *Jones v. Conwell,* 227 Va. 176 (1984).

Before allotting or ordering the sale of the property, the court must first find that a division in kind cannot be conveniently made. *Sensabaugh v. Sensabaugh,* 232 Va. 250 (1986). *Nickels v. Nickels,* 197 Va. 498 (1955). The evidence indicates that the subject property is a lot in

a residential subdivision with a single-family dwelling. It is evident that the property is not divisible in kind, and no exception has been taken to the commissioner's finding to that effect.

Next, the court must decide whether allotment or sale is in the best interests of the parties. If allotment is preferable, the court may allot the entire property to one of the parties "who will accept it and pay therefor to the other parties such sums of money as their interests therein may entitle them to." Virginia Code § 8.01–83. However, whether allotment should be decreed is a matter resting within the sound discretion of the court. *White v. Pleasants*, 227 Va. 508 (1984).

Here, the commissioner has recommended that the entire property be allotted to Mrs. Birney. The commissioner's analysis compels that result since he concludes that Mr. Mato would receive nothing from the proceeds of a sale of the property. For the reasons explained below, the court disagrees with that analysis but comes to the same conclusion with respect to allotment. In other words, the court is of the opinion that the property should be allotted to Mrs. Birney if she will pay to Mr. Mato the sum of money to which his interest entitles him.

Having determined these issues, the next question is the amount to which each co-tenant is entitled. We start with the proposition that joint tenants own equal shares; each co-tenant's interest is the same as that of each of his companions. 2 Minor, *The Law of Real Property* (2d ed. 1928) § 841. In fact, this is presumptively true of all co-tenancies. The presumption has not been rebutted in this case; in fact, no evidence of a contrary intent was proffered.

In a suit for partition, a court of equity may take cognizance of all questions of law affecting legal title that may arise in the proceeding. Virginia Code § 8.01–81; *Price v. Simpson*, 182 Va. 530 (1944). This includes authority to settle accounts between the parties involving the property to be partitioned. 14A M.J., *Partition*, § 14. Where two persons purchase property jointly and one of them pays more than his share of the purchase price, or discharges a lien, the co-tenant who pays more than his share is entitled to ratable contribution from the other co-tenants upon partition. *Grove v. Grove*, 100 Va. 556 (1902); 5A M.J., *Co-tenancy*, § 38 and § 39.

The commissioner reports that the subject property was purchased with $14,980.92 cash from the parties' joint account in Arizona, which in turn he convincingly traces to Mrs. Birney's separate funds. The court is satisfied that the source of the cash down payment for the

purchase of the Sheraton Hills East residence was Mrs. Birney's separate funds, and she is entitled to contribution for so much of that advance as exceeds her one-half interest in the property.

The balance of Mrs. Birney's claim against Mr. Mato's share is without merit. Assume for a moment that the money the parties had at their disposal during their relationship can be traced. Assume further that most of that money can be traced to Mrs. Birney's separate funds. Even so, that fact does not entitle Mrs. Birney to recoup those monetary contributions from Mr. Mato's share of this property. Those monetary contributions were to the *relationship*, not to the acquisition, maintenance, and improvement of the *property* that is the subject of this suit. In a partition suit, the rights of the parties to the property, and all questions affecting legal title of that property, are appropriate inquiries. However, this does not extend to matters of general indebtedness between the parties. *Adkins v. Adkins*, 117 Va. 445 (1915). Further, the equities of the parties in a partition cannot be determined by reference to the principles that guide the courts in making an equitable distribution of marital property upon dissolution of a marriage. The various monetary and nonmonetary contributions to the relationship, and the other factors listed in § 20–107.3, are not relevant to a partition of property jointly owned by persons who are not married to one another.

As an alternative theory, Mrs. Birney contends that the court should impose a constructive trust on Mr. Mato's share of this property so as to produce an equitable result. She cites *Goode v. Goode*, 396 S.E.2d 430 (W.Va. 1990), in support of her position. The court finds that case inapposite, and even if the principles announced in *Goode* were applied here, the court is of the opinion that a fair result is achieved by giving credit to Mrs. Birney for the cash in excess of her share that she paid toward the purchase of the property in question.

For the reasons explained, the court is of the opinion that each party owns a one-half interest in the residence and that Mrs. Birney is entitled to contribution in the amount of $7,445.46 (i.e., one-half of $14,890.92) from Mr. Mato's share.

Mrs. Birney also asks compensation, or contribution, for improvements that she says she made to the subject property and to the other houses that the parties jointly owned during their relationship. Insofar as her claim addresses improvements made to previously-owned properties, the principles explained above clarify the irrelevancy of such

matters. As for improvements made to the Sheraton Hills East property, such compensation is appropriate under certain circumstances in partition suits, but the burden is on the co-tenant claiming compensation for improvements to prove the amount by which the value of the property has been enhanced. In other words, the co-tenant making the improvements is not entitled to a dollar-for-dollar credit but may be reimbursed or credited with an amount equal to the enhancement value of the improvements. *Shotwell v. Shotwell,* 202 Va. 613 (1961). As the commissioner has noted, no evidence of enhanced value has been presented, and, accordingly, neither party is entitled to compensation against the other for any improvements made to the property.

The commissioner found that the residence has a fair market value of $121,500.00, encumbered by a deed of trust with a principal balance of $72,500.00. The evidence supports these factual findings, and no exceptions to them were taken.

Because Mrs. Birney has expressed an interest in having the property allotted to her and the court has found that such allotment would best promote the interests of the parties, Mrs. Birney will be given sixty days from the date of the order to obtain refinancing of the property and arrange for payment to Mr. Mato of the sum to which he is entitled (including removal of his obligation on the deed of trust note). Otherwise, the court will appoint Mr. Ackerman and Ms. King special commissioners to sell the property in one of the modes provided by law.

### Personal Property

Although partition of personal property was unknown at common law, courts having general equity jurisdiction are now authorized by statute to partition "goods" and "chattels." Virginia Code § 8.01–93.

The commissioner was presented with no evidence of value of any of the items of personal property listed in Mr. Mato's bill. Therefore, he was unable to make a division in kind. Instead, he found that Mrs. Birney's monetary contributions to the relationship constituted 61.7% of the total, and Mr. Mato's monetary contributions amounted to 38.3%, and therefore, the articles should be appraised and allotted in those proportions. The principles applicable to partition have been explained in detail. It was error for the commissioner to assign percentage interests in these articles of property based on the amounts of

money that each party contributed to their *relationship* between 1977 and 1987.

Upon an independent review of the evidence, the court finds that a number of the disputed items on Exhibit C belong exclusively to Mrs. Birney because she paid for them from her separate funds without any contribution from Mr. Mato. The parties were never married; therefore, there is no presumption that a gift of any interest in these items was intended. Mr. Mato presented no evidence of donative intent and no documentation to show co-ownership. The disputed items of personal property that belong to Mrs. Birney are: grandfather clock, lighted curio cabinet, oriental wall decoration, bowfront china cabinet, brass bed with mattress and box springs, high boy, triple dresser with mirror, two night stands, desk, sleeper sofa, bookcase, sofa table, and washer.

In addition, it is obvious from the evidence that some of the disputed items belong to Mrs. Birney as gifts: all of the jewelry, jade figurine and jade tree.

With respect to the other disputed items, the testimony is hopelessly irreconcilable or there is no satisfactory evidence at all. Most of those items were purchased with charge cards or from a joint checking account, the source of which cannot be fairly traced. Therefore, the parties own those items in equal shares. Neither party presented persuasive evidence regarding improvements or repairs to such items which entitle one or the other to a credit, set-off, or contribution.

Under the circumstances of this case, the following disputed articles of personal property must be sold and the proceeds equally divided after first deducting the costs of sale: white couch with cushions, two brass lamps, color TV, recliner, love seat, overstuffed chair with ottoman, VCR, china cabinet with hutch, dining room table, brass day bed, dryer, freezer, lawnmower, tools, patio furniture, gas grill, hedge trimmer, and all kitchen items.

The ceiling fans and venetian blinds are fixtures and are not subject to partition as "chattels."

### Conclusion

Insofar as the commissioner's report is inconsistent with the principles announced above, it is rejected. In all other respects, particularly his findings of fact, the report is approved and confirmed.

The court confirms the report with regard to attorney's fees and costs, and the court approves the commissioner's fee requested in the report.

Mr. Ackerman will please prepare and circulate a sketch order, making reference to this opinion. If arrangements for a satisfactory allotment are not made within sixty days after the order is entered, Mr. Ackerman will prepare and present a second order appointing Mr. Ackerman and Ms. King special commissioners to sell the property in one of the modes provided by law. If the parties cannot agree upon a method of private sale, public auction will be necessary.